FARHAD NOVIAN (SBN 118129)
farhad@novianlaw.com
MICHAEL O'BRIEN (SBN 277244)
michaelo@novianlaw.com
ALEXANDER BRENDON GURA (SBN 305096)
gura@novianlaw.com
**NOVIAN & NOVIAN, LLP**
1801 Century Park East, Suite 1201
Los Angeles, California 90067
Telephone: (310) 553-1222
Facsimile: (310) 553-0222

*Attorneys for Plaintiff TRILLER FIGHT CLUB II LLC*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRILLER FIGHT CLUB II LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>TED ENTERTAINMENT, INC. a California corporation; TEDDY FRESH, INC, a California corporation; ETHAN KLEIN, an individual; HILA KLEIN, an individual; and Does 1-10,<br><br>Defendants. | CASE NO.: 2:21-cv-03942-JAK-KS<br><br>**SECOND AMENDED COMPLAINT FOR:**<br>1. COPYRIGHT INFRINGEMENT<br>2. VICARIOUS COPYRIGHT INFRINGEMENT<br>3. VIOLATION OF THE FEDERAL COMMUNICATIONS ACT: 47 U.S.C. § 605<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Triller Fight Club II LLC, a Delaware limited liability company ("Plaintiff" or "Triller"), hereby complains against Defendants Ted Entertainment, Inc. ("TEI"), Teddy Fresh, Inc. ("Teddy Fresh"), Ethan Klein ("Mr. Klein"), Hila Klein ("Mrs. Klein"), and Does 1-10 (collectively, "Defendants"), alleging as follows:

## NATURE OF THIS ACTION

1. Plaintiff is the copyright owner and publisher of the Triller Fight Club broadcast of the "Jake Paul vs. Ben Askren" boxing event, including all undercard bouts and the entire television broadcast, exhibited via closed circuit television and via encrypted satellite signal (the "Broadcast"). Plaintiff's copyright in the Broadcast bears Registration Number PA 2-290-040, became effective on April 30, 2021, and was decided on May 4, 2021. A true and correct copy of Plaintiff's certificate of registration is attached hereto **Exhibit A**.

2. The Broadcast originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal and/or retransmitted via satellite signal to licensed content distributors such as Plaintiff's authorized online platforms. The Broadcast was then made available to consumers for purchase on a pay-per-view basis. Plaintiff's certificate of registration reflects this limited publication.

3. Upon information and belief, Defendants own and operate the YouTube channel located at https://www.youtube.com/channel/UCLtREJY21xRfCuEKvdki1Kw (the "YouTube Channel"). Upon information and belief, the H3 Podcast and YouTube Channel earn profits, including via (i) the YouTube Partner Program, (ii) sponsorships from unaffiliated third-party individuals and entities, and (iii) the sale of merchandise through businesses affiliated with Defendants, including, but not limited to, Teddy Fresh. Upon information and belief, Defendants' profits from their ownership and operation of the YouTube Channel are tied to the number of views the YouTube Channel receives.

4.      Upon information and belief, Defendants did not purchase the Broadcast, but rather publicly admitted to having unlawfully "bootlegged" or "pirated" the Broadcast.[1]

5.      Upon information and belief, on or about April 22, 2021, without requesting or receiving authorization, Defendants uploaded all or a substantial portion of the Broadcast, in unaltered form, as an "Unlisted" video on YouTube (the "Unlisted Video"), and publicly displayed the URL for the Unlisted Video on the YouTube Channel in Defendants' video entitled "Jake Paul Fight Was A Disaster – H3 Podcast # 244," available at https://youtu.be/bfKPts4BJkA (the "Distribution Video"). As shown in the screenshot below, the URL for the Unlisted Video first appeared in the Distribution Video at approximately 1:29:29 and remained visible through at least approximately 1:30:58.



---

[1] *See* DJ Screwdriver Media Posts (@MediaPostsDJ), Twitter (May 3, 2021, 5:13 p.m.), https://twitter.com/MediaPostsDJ/status/1389372495749390337?s=20.

6. Upon information and belief, the Distribution Video has been viewed at least 1,000,000 times, and continues to receive additional views with each passing day.

7. Upon information and belief, through its egregious conduct, Defendants unlawfully facilitated, participated, and induced other users to engage in the unauthorized reproduction, adaptation, distribution and public display of Plaintiff's copyrighted Broadcast.

**JURISDICTION AND VENUE**

8. The Court has subject matter jurisdiction pursuant to 17 U.S.C. § 101, *et seq.* and 28 U.S.C. § 1331, which states that district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a), which states that district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks.

9. Venue is proper in this Court pursuant to 28 U.S.C § 1391(b)(2) because Defendants reside in this judicial district. Alternatively, venue is also proper in this Court pursuant to 28 U.S.C § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and because Defendants' unlawful actions were directed at this District.

**PARTIES**

10. Plaintiff is a limited liability company incorporated under the laws of Delaware and having its principal place of business in the State of California.

11. Plaintiff is engaged in the business of distributing its copyrighted materials as defined in 17 U.S.C. § 101, and offering such content, including the Broadcast, for purchase on a pay-per-view basis to its paying customers over the internet or via cable or satellite TV. Plaintiff invests substantial money, time, and effort in advertising, promoting, selling, and licensing programming such as the

Broadcast.

12. Plaintiff owns the copyrights to the Broadcast. As the exclusive owner of the Copyright in its programing, including but not limited to the Broadcast, Plaintiff possesses the exclusive rights to, *inter alia*, exhibit, distribute, disseminate and perform the Broadcast publicly.

13. TEI is a corporation registered to conduct business in the State of California. Upon information and belief, TEI owns and operates, among other things, the so-called H3 Podcast (the "H3 Podcast") and the YouTube channel located at https://www.youtube.com/channel/UCLtREJY21xRfCuEKvdki1Kw (the "YouTube Channel"). Upon information and belief, TEI, through the H3 Podcast and YouTube Channel, earns profits, including via (i) the YouTube Partner Program, (ii) sponsorships from unaffiliated third-party individuals and entities, and (iii) the sale of merchandise through businesses affiliated with Defendants, including, but not limited to, Teddy Fresh.

14. Teddy Fresh is a corporation registered to conduct business in the State of California. Upon information and belief, Teddy Fresh is a clothing retailer. The YouTube Channel and/or videos posted to the YouTube Channel contain links to a website owned and/or operated by Teddy Fresh and through which consumers can purchase Teddy Fresh merchandise.

15. Mr. Klein is an individual residing in the State of California. Mr. Klein is the Chief Executive Officer of TEI and the Secretary of Teddy Fresh.

16. Mrs. Klein is an individual residing in the State of California. Mrs. Klein is the Secretary of TEI, and the Chief Executive Officer, Chief Financial Officers, and sole director of Teddy Fresh.

## ALTER EGO ALLEGATIONS

17. Upon information and belief, at all relevant times, there existed a unity of interest between Defendants such that any individuality or separateness between them has ceased. TEI and Teddy Fresh are the alter egos of Mr. Klein and Mrs. Klein in

that:

    a. TEI and Teddy Fresh are, and at all relevant times were, mere shells, instrumentalities, and conduits through which Mr. Klein and Mrs. Klein carried on business in the name of TEI and Teddy Fresh, while exercising complete control and dominance over TEI and Teddy Fresh, their business and assets, to such an extent that any individuality or separateness between TEI and Teddy Fresh, on the one hand, and Mr. Klein and Mrs. Klein, on the other, did not exist. TEI and Teddy Fresh share, *inter alia*, corporate officers and directors, as well as corporate offices.

    b. TEI and Teddy Fresh were conceived, intended, and used by Mr. Klein and Mrs. Klein as a device to avoid liability and for the purpose of substituting an undercapitalized entity—namely, TEI and Teddy Fresh—in the place of Mr. Klein and Mrs. Klein. TEI and Teddy Fresh are, and at all times herein mentioned were, so inadequately capitalized that, compared with the business done by Mr. Klein and Mrs. Klein and the risks of loss, their capitalization was illusory and trifling. In addition, many assets of TEI and Teddy Fresh were transferred without adequate consideration to Mr. Klein and Mrs. Klein. Upon information and belief, neither TEI nor Teddy Fresh are insured.

    c. Mr. Klein and Mrs. Klein diverted assets from TEI and Teddy Fresh to themselves to suit their own convenience in carrying out business matters which were and should have been the domain of TEI and Teddy Fresh.

    d. TEI and Teddy Fresh are, and at all times herein mentioned were, controlled, dominated, and operated by Mr. Klein and Mrs. Klein as their alter ego, in that the activities and business of TEI and Teddy

Fresh were carried out without annual meetings, and without keeping records or minutes of any proceedings, or maintaining written resolutions.

18. Adherence to the fiction of the separate existence of TEI and Teddy Fresh, on the one hand, and Mr. Klein and Mrs. Klein, on the other, would permit an abuse of the corporate privilege and would sanction fraud, promote injustice, and otherwise aid in the commission of unlawful conduct. This is true because, as Plaintiff is informed and believes, at all relevant times, Defendants were commingling assets in a manner that allowed Defendants to utilize and freely transfer those assets amongst themselves. The commingling of assets and unlawful business conduct, as alleged more fully herein, by Defendants was intended, among other things, to allow Mr. Klein and Mrs. Klein to avoid liability to Plaintiff and others.

## COUNT ONE
### (Copyright Infringement)

19. Plaintiff hereby realleges, and by this reference incorporates herein, each and every allegation of preceding and subsequent paragraphs as though fully set forth herein.

20. Plaintiff is the copyright owner and publisher of the Broadcast. As the copyright owner and publisher of the Broadcast, Plaintiff has the exclusive right to copy, publicly perform and distribute the Broadcast. Plaintiff's rights include, but are not limited to, all moving images and other audio/video content which were broadcasted via encrypted satellite signal.

21. The Broadcast originated via satellite uplink and was subsequently retransmitted to cable systems and satellite companies via satellite signal and/or retransmitted via satellite signal to licensed content distributors such as Plaintiff's authorized, online platforms. The Broadcast was then made available to consumers for purchase on a pay-per-view basis.

22. Upon information and belief, Defendants did not purchase the Broadcast,

but rather publicly admitted to having unlawfully "bootlegged" or "pirated" the Broadcast.[2]

23. Upon inspecting records of customers who lawfully purchased access to the Broadcast, there was no record of Ethan Klein, Hila Klein, the H3 Podcast, or TED Entertainment making a purchase of a license to view the Broadcast.

24. Upon information and belief, on or about April 22, 2021, without requesting or receiving authorization, Defendants uploaded to YouTube all or a substantial portion of Broadcast, in unaltered form, as the Unlisted Video, and publicly displayed the URL for the Unlisted Video on the YouTube Channel in the Distribution Video. The URL for the Unlisted Video first appeared in the Distribution Video at approximately 1:29:29 and remained visible through at least approximately 1:30:58.

25. Upon information and belief, the Distribution Video has been viewed at least 1,000,000 times, and continues to receive additional views with each passing day.

26. Upon information and belief, numerous individuals who had not purchased and did not purchase the Broadcast on a pay-per-view basis were able to, and did, freely view all or a substantial portion of the Broadcast, in unaltered form, via the Unlisted Video.

27. Defendants infringed on Plaintiff's rights by adapting, copying, reproducing, uploading, publicly displaying, and distributing the Broadcast without Plaintiff's authorization in violation of the Copyright Act, 17 U.S.C. § 501. Defendants' acts of infringement were willful, in blatant disregard of, and committed with indifference to Plaintiff's rights.

28. Upon information and belief, the H3 Podcast and YouTube Channel have profited from their unlawful conduct alleged herein, including via (i) the YouTube Partner Program, (ii) sponsorships from unaffiliated third-party individuals and entities, and (iii) the sale of merchandise through businesses affiliated with

---

[2] *See* DJ Screwdriver Media Posts (@MediaPostsDJ), Twitter (May 3, 2021, 5:13 p.m.), https://twitter.com/MediaPostsDJ/status/1389372495749390337?s=20.

Defendants, including, but not limited to, Teddy Fresh. Upon information and belief, Defendants would not have realized such profits but for their infringement on Plaintiff's rights. As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of the Broadcast, in an amount to be established at trial.

## COUNT TWO

### (Vicarious Copyright Infringement)

29. Plaintiff hereby realleges, and by this reference incorporates herein, each and every allegation of preceding and subsequent paragraphs as though fully set forth herein.

30. Plaintiff is the copyright owner and publisher of the Broadcast. As the copyright owner and publisher of the Broadcast, Plaintiff has the exclusive right to copy, publicly perform and distribute the Broadcast. Plaintiff's rights include, but are not limited to, all moving images and other audio/video content which were broadcasted via encrypted satellite signal.

31. The Broadcast originated via satellite uplink and were subsequently retransmitted to cable systems and satellite companies via satellite signal and/or retransmitted via satellite signal to licensed content distributors such as Plaintiff's authorized, online platforms. The Broadcast was then made available to consumers for purchase on a pay-per-view basis.

32. Upon information and belief, on or about April 22, 2021, without requesting or receiving authorization, Defendants uploaded to YouTube all or a substantial portion of Broadcast, in unaltered form, as the Unlisted Video, and publicly displayed the URL for the Unlisted Video on the YouTube Channel in the Distribution Video. The URL for the Unlisted Video first appeared in the Distribution Video at approximately 1:29:29 and remained visible through at least approximately 1:30:58.

33. Upon information and belief, the Distribution Video has been viewed at least 1,000,000 times, and continues to receive additional views with each passing day.

34. Upon information and belief, numerous individuals who had not purchased and did not purchase the Broadcast on a pay-per-view basis were able to, and did, freely view all or a substantial portion of the Broadcast, in unaltered form, via the Unlisted Video.

35. Upon information and belief, Defendants created the Unlisted Video and had the exclusive right and ability to prevent consumers from accessing and viewing the Unlisted Video and thereby infringing on Plaintiff's rights.

36. Upon information and belief, the H3 Podcast and YouTube Channel have profited from their unlawful conduct alleged herein, including via (i) the YouTube Partner Program, (ii) sponsorships from unaffiliated third-party individuals and entities, and (iii) the sale of merchandise through businesses affiliated with Defendants, including, but not limited to, Teddy Fresh. Upon information and belief, Defendants would not have realized such profits but for their infringement on Plaintiff's rights. As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of the Broadcast, in an amount to be established at trial.

## COUNT THREE

**(Violation of the Federal Communications Act, 47 U.S.C. § 605)**

37. Plaintiff hereby realleges, and by this reference incorporates herein, each and every allegation of preceding and subsequent paragraphs as though fully set forth herein.

38. Plaintiff is the copyright owner and publisher of the Broadcast. As the copyright owner and publisher of the Broadcast, Plaintiff has the exclusive right to copy, publicly perform and distribute the Broadcast. Plaintiff's rights include, but are not limited to, all moving images and other audio/video content which were broadcasted via encrypted satellite signal.

39. The Broadcast originated via satellite uplink and were subsequently retransmitted to cable systems and satellite companies via satellite signal and/or

retransmitted via satellite signal to licensed content distributors such as Plaintiff's authorized, online platforms. The Broadcast was then made available to consumers for purchase on a pay-per-view basis.

40. Consumers who purchased the Broadcast on a pay-per-view basis were expressly and unequivocally advised that the "unauthorized reproduction or distribution of the copyrighted work is illegal."

41. Upon information and belief, with full knowledge that the Broadcast was not to be received, distributed, reproduced and or publicly exhibited by individuals unauthorized to do so, Defendants, without authorization from Plaintiff, unlawfully intercepted, received and/or de-scrambled Plaintiff's satellite signal for purposes of direct commercial advantage. Specifically, Defendants unlawfully obtained access to the Broadcast[3], and on or about April 22, 2021, without requesting or receiving authorization, Defendants uploaded to YouTube all or a substantial portion of Broadcast, in unaltered form, as the Unlisted Video. Defendants subsequently publicly displayed the URL for the Unlisted Video on the YouTube Channel in the Distribution Video.

42. Upon information and belief, the Distribution Video has been viewed at least 1,000,000 times, and continues to receive additional views with each passing day.

43. Upon information and belief, numerous individuals who had not purchased and did not purchase the Broadcast on a pay-per-view basis were able to, and did, freely view all or a substantial portion of the Broadcast, in unaltered form, via the Unlisted Video.

44. Upon information and belief, the H3 Podcast and YouTube Channel have profited from their unlawful conduct alleged herein, including via (i) the YouTube Partner Program, (ii) sponsorships from unaffiliated third-party individuals and entities, and (iii) the sale of merchandise through businesses affiliated with

---

[3] *See* DJ Screwdriver Media Posts (@MediaPostsDJ), Twitter (May 3, 2021, 5:13 p.m.), https://twitter.com/MediaPostsDJ/status/1389372495749390337?s=20.

Defendants, including, but not limited to, Teddy Fresh. Upon information and belief, Defendants would not have realized such profits but for their infringement on Plaintiff's rights. As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of the Broadcast, in an amount to be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

AS TO COUNT ONE:

45. That Defendants and Defendants' employees, representatives, and agents be enjoined from copying, uploading, distributing, selling, or otherwise infringing on Plaintiff's copyright in the Broadcast;

46. That Plaintiff be awarded all profits of Defendants plus all losses of Plaintiff, the exact sum to be proven at the time of trial, or statutory damages in the amount of $150,000 per violation; and

47. That an order be issued requiring Defendants to account to Plaintiff for profits attributable to their use of Plaintiff's copyright, in accordance with proof.

AS TO COUNT TWO:

48. That Defendants and Defendants' employees, representatives, and agents be enjoined from copying, uploading, distributing, selling, or otherwise infringing on Plaintiff's copyright in the Broadcast;

49. That Plaintiff be awarded all profits of Defendants plus all losses of Plaintiff, the exact sum to be proven at the time of trial, or statutory damages in the amount of $150,000 per violation; and

50. That an order be issued requiring Defendants to account to Plaintiff for profits attributable to their use of Plaintiff's copyright, in accordance with proof.

AS TO COUNT THREE:

51. For statutory penalties in an amount, in the discretion of this Court, of up to the maximum amount of $110,000.00, for Defendants' willful violations of 47

U.S.C. § 605(a).

AS TO ALL COUNTS:

52. For pre-judgment and post-judgment interest on all damages awarded;

53. For attorneys' fees and costs of suit incurred herein according to proof; and

54. For such other and further relief as the Court may deem just and proper.

Dated: July 23, 2021   NOVIAN & NOVIAN, LLP
Attorneys at Law

By:   /s/ Farhad Novian
FARHAD NOVIAN
MICHAEL O'BRIEN
ALEXANDER BRENDON GURA

*Attorneys for Plaintiff TRILLER FIGHT CLUB II LLC*

# EXHIBIT A

**Registration #:** PA0002290040
**Service Request #:** 1-10414848281

## Mail Certificate

Latham & Watkins LLP
Julie L. Dalke
650 Town Center Drive, Suite 2000
Costa Mesa, CA 92626 United States

**Priority:** Special Handling   **Application Date:** April 30, 2021

## Correspondent

**Organization Name:** Latham & Watkins LLP
**Name:** Julie L. Dalke
**Email:** ipdocket@lw.com
**Address:** 650 Town Center Drive, Suite 2000
Costa Mesa, CA 92626 United States

**Registration Number**
# PA 2-290-040
**Effective Date of Registration:**
April 30, 2021
**Registration Decision Date:**
May 04, 2021

## Title

**Title of Work:** Jake Paul vs Ben Askren

## Completion/Publication

**Year of Completion:** 2021
**Date of 1st Publication:** April 17, 2021
**Nation of 1st Publication:** United States

## Author

- **Author:** Triller Fight Club II, LLC
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** Triller Fight Club II, LLC
2121 Avenue of the Stars Suite 2320, Los Angeles, CA, 90067, United States

## Limitation of copyright claim

**Material excluded from this claim:** preexisting footage, preexisting photograph(s), preexisting music, musical performances

**New material included in claim:** additional new footage, production as a motion picture

## Certification

**Name:** John Flock
**Date:** April 30, 2021
**Applicant's Tracking Number:** 068356-0002