FARHAD NOVIAN (SBN 118129)
farhad@novianlaw.com
MICHAEL O'BRIEN (SBN 277244)
michaelo@novianlaw.com
ALEXANDER BRENDON GURA (SBN 305096)
gura@novianlaw.com
**NOVIAN & NOVIAN, LLP**
1801 Century Park East, Suite 1201
Los Angeles, California 90067
Telephone: (310) 553-1222
Facsimile: (310) 553-0222

*Attorneys for Plaintiff Triller Fight Club II LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRILLER FIGHT CLUB II LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>TED ENTERTAINMENT, INC. a California corporation, ETHAN KLEIN, an individual, HILA KLEIN, an individual, and Does 1-10,<br><br>Defendants. | CASE NO.: 2:21-cv-03942-JAK-KS<br><br>Assigned to: Hon. John A. Kronstadt<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)**<br><br>**[Filed concurrently with:**<br>  1. **Declaration of Alexander Brendon Gura; and**<br>  2. **Plaintiff's Opposition to Defendants' Request for Judicial Notice.]**<br><br>Date: November 22, 2021<br>Time: 8:30 a.m.<br>Place: Courtroom 10B |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................... 1

II.    STATEMENT OF FACTS ......................................................................... 2

III.   ARGUMENT ............................................................................................. 4

     A.    Legal Standard. ............................................................................... 4

     B.    Defendants Implicitly Admit to Directly Violating the Copyright Act.. 6

     C.    Defendants Implicitly Admit to Vicariously Violating the Copyright Act. ................................................................................................... 7

     D.    Defendants Did Not Merely Watch a Transmission or Create a Stream. 8

     E.    The Fair Use Defense is Inappropriate at the Motion to Dismiss Stage. ........................................................................................... 10

     F.    Defendants' Bad Faith Counsels Against Defendants' Ability to Invoke the Protections of Fair Use. .................................................... 11

     G.    The "Intermediate Use" Doctrine Does Not Apply to Defendants' Conduct. ....................................................................................... 13

          1.    Defendants Could Have Created Their Commentary and Critique Without Violating Fight Club's Copyright Rights. ..................... 13

          2.    The Intermediate Use Doctrine Applies Only Where the Copyrighted Material is Not Used in the End Product. ............... 14

     H.    The Four Factors Counsel Against Defendants' Ability to Invoke the Protections of Fair Use. ........................................................... 14

          1.    The First Factor Counsels Strongly Against a Finding of Fair Use. ........................................................................................... 15

          2.    The Second Factor Counsels Strongly Against a Finding of Fair Use. ........................................................................................... 15

          3.    The Third Factor Counsels Strongly Against a Finding of Fair Use. ........................................................................................... 16

4.    The Fourth Factor Counsels Strongly Against a Finding of Fair Use. ........................................................................................ 16

I.    Defendants Implicitly Admit to Violating the Federal Communications Act. ........................................................................................ 17

1.    Plaintiff Established It Was the Party Aggrieved by Defendants' Actions. ..................................................................................... 17

2.    Plaintiff Alleges Defendant Intercepted a Wire or Radio Program and Published It Without Permission. ........................................ 18

J.    Plaintiff's Alter-Ego Allegations Are Sufficient. .................................. 19

K.    To The Extent the Court is Inclined to Dismiss Any of Plaintiff's Causes of Action as to Any Defendant, Plaintiff Respectfully Requests Leave to Amend. ................................................................................... 20

# TABLE OF AUTHORITIES

<u>Cases</u>

*A&M Recs., Inc. v. Napster, Inc.*
239 F.3d 1004 (9th Cir. 2001) .......................................................................... 6, 7

*Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*
69 F.3d 381 (9th Cir. 1995) ................................................................................ 17

*Arica Inst., Inc. v. Palmer*
970 F.2d 1067 (2d Cir. 1992) .............................................................................. 11

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ............................................................................................... 5

*Atari Games Corp. v. Nintendo of America Inc.*
975 F.2d 832 (Fed. Cir. 1992) ....................................................................... 11, 12

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ........................................................................................... 5, 6

*Brownstein v. Lindsay*
742 F.3d 55 (3d Cir. 2014) ................................................................................... 9

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*
87 F. Supp. 3d 499 (S.D.N.Y. 2015) .................................................................. 10

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*
227 F.R.D. 313 (C.D. Cal. 2004) ........................................................................ 19

*Campbell v. Acuff-Rose Music, Inc.*
510 U.S. 569 (1994) ....................................................................................... 11, 16

*Cariou v. Prince*
714 F.3d 694 (2d Cir. 2013) .......................................................................... 10, 15

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*
150 F.3d 132 (2d Cir. 1998) ............................................................................... 11

iii

*Columbia Pictures Indus., Inc. v. Miramax Films Corp.*

  11 F. Supp. 2d 1179 (C.D. Cal. 1998)...........................................................12

*DirecTV, Inc. v. Webb*

  545 F.3d 837 (9th Cir. 2008) ........................................................................17

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*

  256 F. Supp. 3d 1099 (S.D. Cal. 2017) .........................................................11

*Erickson v. Pardus*

  551 U.S. 89 (2007) .........................................................................................5

*Fisher v. Dees*

  794 F.2d 432 (9th Cir. 1986)..........................................................................17

*Fox Broad. Co. v. Dish Network, L.L.C.*

  905 F. Supp. 2d 1088 (C.D. Cal. 2012)..........................................................14

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*

  826 F.2d 837 (9th Cir. 1987) ..........................................................................12

*Gilligan v. Jamco Development Corp.*

  108 F.3d 246 (9th Cir. 1997).............................................................................4

*Graham v. Prince*

  265 F. Supp. 3d 366 (S.D.N.Y. 2017)............................................................10

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*

  328 F.3d 1122 (9th Cir. 2003).........................................................................21

*Hosseinzadeh v. Klein*

  276 F.Supp.3d 34 (S.D.N.Y. 2017)............................................................1, 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*

  No. 3:19-CV-1391-CRB, 2021 WL 330237 (N.D. Cal. Feb. 1, 2021)............................................................................................................12

*Joe Hand Promotions, Inc. v. Garl*

    No. 1:12-CV-00672-LJO, 2013 WL 3422487 (E.D. Cal. July 8, 2013) ........................................................................................ 17

*Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*

    964 F.2d 965 (9th Cir. 1992) .................................................... 9

*Lone Ranger Television v. Program Radio Corp.*

    740 F.2d 718 (9th Cir.1984) ..................................................... 9

*Luvdarts, LLC v. AT & T Mobility, LLC*

    710 F.3d 1068 (9th Cir. 2013) .................................................. 7

*Mattel, Inc. v. Walking Mountain Prods.*

    353 F.3d 792 (9th Cir. 2003) .................................................. 10

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*

    545 U.S. 913 (2005) ................................................................. 7

*Milton H. Greene Archives, Inc. v. BPI Commc'ns, Inc.*

    378 F. Supp. 2d 1189 (C.D. Cal. 2005) .................................... 9

*Nat'l Council of La Raza v. Cegavske*

    800 F.3d 1032 (9th Cir. 2015) ................................................ 20

*NXIVM Corp. v. Ross Inst.*

    364 F.3d 471 (2d Cir. 2004) ................................................... 13

*Perfect 10, Inc. v. Amazon.com, Inc.*

    508 F.3d 1146 (9th Cir. 2007) ................................................ 13

*Porter v. Jones*

    319 F.3d 483 (9th Cir. 2003) .................................................... 5

*Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*

    923 F. Supp. 1231 (N.D. Cal. 1995) ...................................... 12

*Sega Enterprises Ltd. v. Accolade, Inc.*

    977 F.2d 1510 (9th Cir. 1992) .................................... 11, 13, 14

*Showtime Networks Inc. v. Doe*
    No. 2:15-CV-03147-GW-MRW, 2015 WL 12552061 (C.D. Cal.
    Apr. 30, 2015)..................................................................................10

*Sony Computer Entertainment, Inc. v. Connectix Corp.*
    203 F.3d 596 (9th Cir. 2000)....................................................13, 14

*Sony Corp. of Am. v. Universal City Studios, Inc.*
    464 U.S. 417 (1984) .......................................................................12

*U.S. v. Corinthian Colleges*
    655 F3d 984 (9th Cir. 2011)...........................................................20

*United States v. Redwood City*
    640 F.2d 963 (9th Cir. 1981)............................................................5

*Williamson v. Gen. Dynamics Corp.*
    208 F.3d 1144 (9th Cir. 2000)..........................................................5

*Zuffa, LLC v. Justin.tv, Inc.*
    838 F. Supp. 2d 1102 (D. Nev. 2012) ...........................................19

Federal Rules

Fed. R. Civ. Proc. 15(a) ........................................................................20

Fed. R. Civ. Proc. 8(a) ............................................................................5

Constitutional Provisions

U.S. Const. Art. I, § 8 ...........................................................................11

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION**

Plaintiff Triller Fight Club II LLC ("Plaintiff" or "Fight Club") owns the copyright to the commercial broadcast of the "Jake Paul vs. Ben Askren" boxing event, including all undercard bouts and the entire commercial television broadcast, exhibited on a pay-per-view basis via closed circuit television and encrypted satellite signal (the "Broadcast").  Defendants TED Entertainment, Inc. ("TEI"), Teddy Fresh, Inc. ("Teddy Fresh"), Ethan Klein, and Hila Klein (collectively, "Defendants") <u>admit</u> that they (i) "bootlegged" or "pirated" the Broadcast without paying Plaintiff the required pay-per-view fee, and (ii) uploaded to YouTube substantial portions of the Broadcast in unaltered form (the "Unlisted Video") which others were able to—and did—view without paying Plaintiff the required pay-per-view fee.  These are textbook violations of the Copyright Act, and Defendants should not be permitted to thumb their noses at the law or this Court.

This is not the first time Defendants have profited by piggybacking off of the creative works of others, nor is it the first time Defendants have found themselves in court as a result of such.  Indeed, as Defendants proudly proclaim, just a few short years ago, Defendants were sued for admittedly using at least 60% of the creative work of another YouTube content creator.  *See Hosseinzadeh v. Klein*, 276 F.Supp.3d 34 (S.D.N.Y. 2017) ("*Hoss*").  Although Defendants were able to successfully invoke the fair use defense in *Hoss*, the facts of *Hoss* are distinguishable in at least three crucial ways:  in *Hoss*, (1) the copyrighted material at issue was not published on a limited, pay-per-view basis, (2) Defendants did not admit having unlawfully 'bootlegged' or 'pirated' the copyrighted pay-per-view material at issue, and (3) Defendants did not re-publish an unaltered version of the copyrighted pay-per-view material at issue so that others could also unlawfully bootleg or pirate the same.

This lawsuit does not concern or seek to stifle Defendants' commentary relating to the Broadcast.  To the contrary, this lawsuit concerns Defendants' creation and

dissemination of the Unlisted Video.  Plaintiff does not seek to silence Defendants, but rather to halt and prevent Defendants from blatantly infringing on Plaintiff's valuable copyrights.  To the extent Defendants wanted to provide commentary concerning the Broadcast, Defendants could—and *should*—have done so without violating the Copyright Act by hiding, obstructing, or obscuring the URL for the Unlisted Video.  But, whether out of negligence, willfulness, or maliciousness, or some combination thereof, Defendants chose to not hide, obstruct, or obscure the URL for the Unlisted Video, and thereby unlawfully permitted at least 65 individuals to view the essential portions of the Broadcast without paying Plaintiff the required pay-per-view fee.

At stake in this case is the incentive for content creators like the Plaintiff to expend vast resources organizing, promoting, and exhibiting creative sports and cultural events like the Broadcast versus the freedom of others like Defendants to illegally bootleg or pirate such events and profit therefrom.

## II.    STATEMENT OF FACTS

The essential facts are largely undisputed.  Plaintiff is the copyright owner and publisher of the Broadcast.  (SAC, ¶ 1.)  Plaintiff's copyright in the Broadcast bears Registration Number PA 2-290-040, became effective on April 30, 2021, and was decided on May 4, 2021.  (*Id*; Declaration of Alexander Brendon Gura in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss ("Gura Decl."), ¶ 2 & Ex. A.) The Broadcast originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal and/or retransmitted via satellite signal to licensed content distributors such as Plaintiff's authorized online platforms.  (*Id*., ¶ 2.)  The Broadcast was then made available to consumers for purchase on a pay-per-view basis.  Plaintiff's certificate of registration reflects this limited publication.  (*Id*.; Gura Decl., ¶ 2 & Ex. A.)

TEI is a for-profit California corporation and, until this action was initiated, its corporate offices were located at 5535 Balboa Blvd., Ste. 222, Encino, CA 91316.

(SAC, ¶ 13; Gura Decl., ¶ 3.)  Ethan Klein is the Chief Executive Officer and Chief Financial Officer of TEI.  (*Id*., ¶ 15; Gura Decl., 3.)  Hila Klein is the Secretary and sole Director of TEI.  (*Id*., ¶ 16; Gura Decl., ¶ 3.)  TEI has no other officers or directors. (Gura Decl., ¶ 3.)

Teddy Fresh is a for-profit California corporation with its corporate offices also located at 5535 Balboa Blvd., Ste. 222, Encino, CA 91316.  (SAC, ¶ 14; Gura Decl., ¶ 4.)  Hila Klein is the Chief Executive Officer, Chief Financial Officer, and sole Director of Teddy Fresh.  (*Id*., ¶ 16; Gura Decl., ¶ 4.)  Ethan Klein is the Secretary of Teddy Fresh.  (*Id*., ¶ 15; Gura Decl., ¶ 4.)  Teddy Fresh has no other officers or directors.  (Gura Decl., ¶ 4.)

TEI produces the commercial H3 Podcast, which is available at the YouTube channel located at https://www.youtube.com/channel/UCLtREJY21xRfCuEKvdki1Kw (the "H3 Podcast" and the "YouTube Channel," respectively).  (SAC, ¶ 13.)  TEI earns profits, from the H3 Podcast and YouTube Channel, including via (i) the YouTube Partner Program, (ii) sponsorships from unaffiliated third-party individuals and entities, (iii) subscription memberships to the H3 Podcast, and (iv) the sale of Teddy Fresh merchandise.  (*Id*.)  Indeed, Defendants use the H3 Podcast and YouTube Channel to advertise and promote Teddy Fresh, including by wearing Teddy Fresh apparel and accessories on the H3 Podcast, referencing Teddy Fresh apparel and accessories on the H3 Podcast, and including clickable links to the Teddy Fresh webpage and Teddy Fresh social media accounts on the YouTube Channel and in the description for each episode of the H3 Podcast.

Defendants admittedly and illegally "bootlegged" or "pirated" the Broadcast without paying Plaintiff the required pay-per-view fee, and, without requesting or receiving authorization, uploaded a substantial portion of the Broadcast to YouTube as an "unlisted" video, i.e., the Unlisted Video.  (SAC, ¶ 5; ECF No. 26-1, at p. 1

("TEI uploaded an excerpt of the Broadcast . . . onto YouTube as an 'unlisted' video . . .").)  According to YouTube:

> ***Unlisted videos and playlists can be seen and shared by anyone with the link***.  Your unlisted videos won't appear in the Videos tab of your channel homepage.  They won't show up in YouTube's search results unless someone adds your unlisted video to a public playlist.
>
> ***You can share an unlisted video's URL***.  Those you share the video with don't need a Google Account to see the video.  ***Anyone with the link can also reshare it***.

(*Unlisted Videos*, YouTube Help, YOUTUBE, *available at* https://support.google.com/youtube/answer/157177?hl=en&co=GENIE.Platform%3DDesktop&oco=1#zippy=%2Cunlisted-videos (emphasis added).)

TEI then uploaded to the YouTube Channel a new episode of the H3 Podcast entitled "Jake Paul Fight Was A Disaster – H3 Podcast # 244" (the "Distribution Video").  In the Distribution Video, Plaintiff showed the URL for the Unlisted Video to Defendants' millions of fans.  (SAC, ¶ 5.)  Thereafter, at least 65 individuals then viewed the Unlisted Video and saw the heart of the Broadcast—*i.e.*, the Jake Paul v. Ben Askren boxing match itself—without paying to Plaintiff the required pay-per-view fee.  (*See* ECF No. 26-1, at pp. 4, 15, and 21 (admitting that the Unlisted Video was viewed at least sixty-five times).)

## III.   ARGUMENT

### A.   Legal Standard.

"The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."  *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) can only be granted in "extraordinary" cases where it is beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle them to

relief.  (*United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981); *see also* Fed. R. Civ. P. 12(b)(6); *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000).

To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Federal Rule of Civil Procedure 8(a), which states, in pertinent part:

> Claim for Relief. A pleading that states a claim for relief must contain:
>
>> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>>
>> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>>
>> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

(Fed. R. Civ. Proc. 8(a); *see also Porter v. Jones,* 319 F.3d 483, 494 (9th Cir. 2003).) The factual allegations must merely be enough to raise a right to relief above a level of speculation. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("*Twombly*"). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Specific facts are not necessary; the statement need only give the [defendant] fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotations and citation omitted).

"When evaluating a [Rule 12(b)(6)] motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in a light most

favorable to the non-moving party." *Twombly*, 550 U.S. at 570.

**B.    Defendants Implicitly Admit to Directly Violating the Copyright Act.**

"Plaintiffs must satisfy two requirements to present a prima facie case of direct infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001), *as amended* (Apr. 3, 2001), *aff'd sub nom. A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002), *and aff'd sub nom. A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002). Copyright holders like Plaintiff have five "exclusive rights" with respect to their copyrighted materials:

> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
>
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
>
> (6) in the case of sound recordings, to perform the

6

1  copyrighted work publicly by means of a digital audio

2  transmission.

3  (17 U.S.C. § 106.)

4  It is undisputed that Plaintiff owns the copyright in the Broadcast.  And, by

5  admitting that they uploaded the Unlisted Video and that it was viewed at least sixty-

6  five times, Defendants admit that they reproduced, distributed, performed, and/or

7  displayed the Broadcast, and prepared derivative works using the Broadcast, in

8  violation of Plaintiff's exclusive rights.

9  **C.   Defendants Implicitly Admit to Vicariously Violating the Copyright**

10  **Act.**

11  "Vicarious infringement occurs when one profits from direct infringement while

12  declining to exercise a right to stop or limit it. . . ." *Luvdarts, LLC v. AT & T Mobility,*

13  *LLC*, 710 F.3d 1068, 1071 (9th Cir. 2013); *see also A&M Recs., Inc. v. Napster, Inc.*,

14  239 F.3d 1004, 1022 (9th Cir. 2001), *as amended* (Apr. 3, 2001), *aff'd sub nom. A&M*

15  *Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002), a*nd aff'd sub nom. A&M*

16  *Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002) ("Vicarious copyright

17  liability is an 'outgrowth' of *respondeat superior*.  [Citation.]  In the context of

18  copyright law, vicarious liability extends beyond an employer/employee relationship

19  to cases in which a defendant 'has the right and ability to supervise the infringing

20  activity and also has a direct financial interest in such activities.'"); *Metro-Goldwyn-*

21  *Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes

22  contributorily by intentionally inducing or encouraging direct infringement, [citation],

23  and infringes vicariously by profiting from direct infringement while declining to

24  exercise a right to stop or limit it."

25  Defendants claim that they did not violate the Copyright Act because, *inter alia*,

26  Defendants "did not:  (1) zoom in on the Reference Video's URL; (2) direct viewers

27  to watch the Reference Video; or (3) state the Reference Video's URL."  (ECF No.

28  26-1, at p. 15.)  Each of these statements is irrelevant; as Defendants know or should

know by virtue of their line of work, Defendants could—and *should*—have hidden, obstructed, or obscured the URL for the Unlisted Video.  But, in a display of complete disregard for the copyright rights of others like Plaintiff, Defendants chose to publish the URL for the Unlisted Video in unobstructed and unobscured form.  As a result, numerous individuals were able to—and did—view the Unlisted Video, and therefore the essential portions of the Broadcast, without paying Plaintiff the required pay-per-view fee.  (ECF No. 26-1, at pp. 4, 15, and 21 (admitting that the Unlisted Video was viewed at least sixty-five times).)  Because each of the individuals who viewed the Unlisted Video necessarily viewed the monetized Distribution Video, Defendants necessarily profited from others' direct infringement of Plaintiff's copyright rights. To the extent Defendants claim that they did not earn any profit by virtue of the Unlisted Video, such claim creates an issue of fact that is not appropriate for resolution at this stage but should—and will—be investigated during the discovery process.

> **D.  Defendants Did Not Merely Watch a Transmission or Create a Stream.**

Defendants take the position that "Triller's copyright infringement claim relies on Ethan's statement that he 'bootlegged' or 'pirated' the April 17, 2021 transmission of the Broadcast," and falsely assert that "[v]iewing a transmission – whether it be Triller's April 17, 2021 transmission of the Broadcast, the Reference Video, or the 4/22/21 Podcast – does not constitute copyright infringement" because "[v]iewing a transmission is not a public display, public performance, public distribution, or derivative work of the original copyrighted work."  (ECF No. 26-1, at p. 8.) Defendants play fast and loose with the facts.  Plaintiff alleges—and Defendants admit—that Defendants (i) unlawfully viewed the Broadcast without paying Plaintiff the required pay-per-view fee, (ii) downloaded the Broadcast without paying Plaintiff the required pay-per-view fee, and (iii) unlawfully uploaded the Broadcast to YouTube where other individuals could—and did—unlawfully view the Broadcast without paying Plaintiff the required pay-per-view fee.  By unlawfully viewing and

downloading the Broadcast, Defendants engaged in direct copyright infringement. By uploading the Broadcast to YouTube where other individuals could—and did—unlawfully view the Broadcast, Defendants engaged in vicarious copyright infringement.

Defendants make much of the Copyright Act's requirement that certain materials be "fixed," and argue that the Broadcast was not fixed and therefore any copies thereof, including the Unlisted Video, cannot be fixed and cannot constitute copyright infringement as a matter of law. Defendants are mistaken on both the facts and the law. The Copyright Office granted Plaintiff's registration of the Broadcast, which is *prima facie* evidence that the Broadcast was in fact fixed. *Milton H. Greene Archives, Inc. v. BPI Commc'ns, Inc.*, 378 F. Supp. 2d 1189, 1194 (C.D. Cal. 2005) ("A certificate of registration is prima facie evidence of validity of a copyright."). To the extent Defendants claim Plaintiff's copyright registration was improperly granted because the Broadcast was not fixed, Defendants can use the procedure in COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 1807 et seq. (3d ed. Jan. 2021) to rectify the matter. *Brownstein v. Lindsay*, 742 F.3d 55, 75 (3d Cir. 2014) ("Courts have no authority to cancel copyright registrations because that authority resides exclusively with the Copyright Office."); *Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 964 F.2d 965, 968 (9th Cir. 1992), *as amended* (Aug. 5, 1992) ("[W]e have held in a copyright infringement action that '[i]t makes no difference that the derivation may not satisfy certain requirements for statutory copyright registration itself.'") (quoting *Lone Ranger Television v. Program Radio Corp.*, 740 F.2d 718, 722 (9th Cir.1984)).

Moreover, Defendants' claim that the Unlisted Video was a "digital stream" and therefore inherently "transitory" is factually inaccurate. The Unlisted Video, as Defendants admit, was uploaded to YouTube and therefore was fixed on one of YouTube's servers. Because of this fixation, other individuals could—and did—view the Unlisted Video, including by playing, pausing, skipping forward or backward, and

even recording.  To the extent Defendants claim that no individuals recorded—or copied—the Unlisted Video, such claim creates an issue of fact that is not appropriate for resolution at this early stage but should—and will—be investigated during the discovery process.

And, even if it is true that the Unlisted Video is a "stream," the Central District has made clear that individuals responsible for unlicensed streams of copyrighted content will be found guilty of, among other things, direct copyright infringement. *See, e.g.*, *Showtime Networks Inc. v. Doe*, No. 2:15-CV-03147-GW-MRW, 2015 WL 12552061, at *2-3 (C.D. Cal. Apr. 30, 2015) (finding that "Plaintiffs have established that they are likely to prevail on at least their direct copyright infringement claim" where plaintiffs show that they hold copyright to certain boxing events, "allege that they jointly own the exclusive rights to, among other things, reproduce and distribute coverage of the fights in the United States," and allege that defendants plan to "'live-stream' over the Internet the upcoming professional boxing match").

**E.      The Fair Use Defense is Inappropriate at the Motion to Dismiss Stage.**

Defendants' sole defense to Plaintiff's claims under the Copyright Act is that Defendants believe their conduct is protected under the "fair use" doctrine.  However, it is well-established that the fair use doctrine "is a 'mixed question of fact and law,' which necessitates 'an open-ended and context-sensitive inquiry[.]'"  *Graham v. Prince*, 265 F. Supp. 3d 366, 376 (S.D.N.Y. 2017) (quoting *Cariou v. Prince*, 714 F.3d 694, 704–05 (2d Cir. 2013)); *see also Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 799 (9th Cir. 2003) ("We also review the district court's finding of fair use under the Copyright Act, a mixed question of law and fact. . . .").  Indeed, "[d]ue to the fact-sensitive nature of the inquiry, courts generally do not address the fair use defense until the summary judgment phase."  *Graham v. Prince*, 265 F. Supp. 3d 366, 377 (S.D.N.Y. 2017); *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015) (explaining that "it is possible to resolve the fair use

inquiry on a motion to dismiss under certain circumstances," but "observ[ing] that there is a dearth of cases granting such a motion"); *see also Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 256 F. Supp. 3d 1099, 1109 (S.D. Cal. 2017) ("Ultimately, given the procedural posture of this motion and near-perfect balancing of the factors, the Court DENIES Defendants' Motion to Dismiss. Specifically, without relevant evidence regarding factor four the Court concludes that Defendants' fair use defense currently fails as a matter of law."). Defendants know this only too well. *See Hosseinzadeh v. Klein*, 16-cv-03081-KBF, ECF No. 22 (S.D.N.Y. Jul. 14, 2016) (converting motion to dismiss based on fair use defense into motion for summary judgment); *Hosseinzadeh v. Klein*, 16-cv-03081-KBF, ECF NO. 79 (S.D.N.Y. Jan. 18, 2019) (denying Defendants' motion for judgment on the pleadings because "Defendants' fair-use defense is not susceptible to determination on the present pleadings alone").

### F. Defendants' Bad Faith Counsels Against Defendants' Ability to Invoke the Protections of Fair Use.

The fair use doctrine is designed to "fulfill copyright's very purpose, 'To promote the Progress of Science and useful Arts,'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994) (quoting U.S. Const. art. I, § 8, cl. 8), by balancing the simultaneous needs "to protect copyrighted material and to allow others to build upon it." *Id.* "The ultimate test of fair use, therefore, is whether the copyright law's goal of 'promoting the Progress of Science and useful Arts,' U.S. Const., art. I, § 8, cl. 8, 'would be better  served by allowing the use than by preventing it.'" *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 141 (2d Cir. 1998) (quoting *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1077 (2d Cir. 1992)).

"[T]o invoke the fair use exception, an individual must possess an *authorized* copy of a literary work." *Atari Games Corp. v. Nintendo of America Inc.*, 975 F.2d 832, 843 (Fed. Cir. 1992) ("*Atari*") (emphasis added); *see also Sega*, 977 F.2d at 1518 (adopting the reasoning of *Atari* and explaining that "[w]e have previously held that

the Copyright Act does not distinguish between unauthorized copies of a copyrighted work on the basis of what stage of the alleged infringer's work the unauthorized copies represent"); *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, 923 F. Supp. 1231, 1245 n.15 (N.D. Cal. 1995) (explaining that *Sega* and *Atari* suggest, among other things, that fair use is unavailable where the defendant does not possess an authorized copy).

Defendants did not obtain the Broadcast lawfully; indeed, Defendants expressly proclaimed to the world that they **stole** the Broadcast.  Because "[f]air use is an 'equitable rule of reason,'" *Columbia Pictures Indus., Inc. v. Miramax Films Corp.*, 11 F. Supp. 2d 1179, 1186 (C.D. Cal. 1998) (*quoting Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 448 (1984)), it stands to reason that those seeking to benefit from application of the doctrine of fair use must have acted in good faith.  *See, e.g., Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987) ("[E]quity requires that those seeking its protection shall have acted fairly and without fraud or deceit as to the controversy in issue.") (citation omitted) (alteration in original); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 3:19-CV-1391-CRB, 2021 WL 330237 (N.D. Cal. Feb. 1, 2021), *order amended and superseded*, 517 F. Supp. 3d 994 (N.D. Cal. 2021) ("The unclean hands doctrine is rooted in the historical concept of [a] court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith.  Thus, it requires that a party seeking equitable relief has acted fairly and without fraud or deceit as to the controversy in issue.  The unclean hands doctrine proscribes equitable relief when, but only when, an individual's misconduct has immediate and necessary relation to the equity that he seeks.") (internal quotation marks omitted) (citations omitted).

Defendants argue that their admission to stealing Plaintiff's copyrighted material is irrelevant because "the Ninth and Second Circuits have explicitly rejected reading *Atari* and *Harper & Row* to require access to an authorized copy to invoke fair use." (ECF No. 26-1, at p. 17.)  However, as the cases on which Defendants rely make

clear, Defendants' bad faith is properly considered in determining whether Defendants may assert the fair use defense. *See NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 479 (2d Cir. 2004) (holding that "the subfactor pertaining to ***defendants' good or bad faith must be weighed***," but is "not dispositive of a fair use defense"); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1164 n.8 (9th Cir. 2007) (noting that "***[u]nlike the alleged infringers in Video Pipeline and Atari Games, who intentionally misappropriated the copyright owners' works for the purpose of commercial exploitation***, Google is operating a comprehensive search engine that only incidentally indexes infringing websites. This ***incidental impact does not amount to an abuse of the good faith and fair dealing underpinnings of the fair use doctrine***.") (emphasis added).[1]

### G.   The "Intermediate Use" Doctrine Does Not Apply to Defendants' Conduct.

Admitting that their content hinges on their use of Fight Club's copyrighted material, Defendants argue that they are protected because their use of Fight Club's copyrighted material was merely an "intermediary" step towards creating a final product that is ultimately protected by fair use. However, the cases upon which Defendants rely—*Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992) ("*Sega*") and *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000) ("*Sony*")— make clear that Defendants' intermediate use of Fight Club's copyrighted material is not protected by fair use.

### 1.   Defendants Could Have Created Their Commentary and Critique Without Violating Fight Club's Copyright Rights.

*First*, for the intermediate coping of copyrighted material to be protected by fair use, it must be the case that the final products could not have been created but for such intermediate copying. Indeed, in both *Sega* and *Sony*, the court specifically noted that

---

[1] Underscoring Defendants' bad faith, Defendants' claim that bad faith is no longer a valid consideration in connection with the fair use analysis relies on misrepresentations and out-of-context quotations of existing case law.

the defendants could not create their final products unless they copied the copyrighted material at issue.  In *Sega*, the Ninth Circuit explained, "where disassembly is ***the only way*** to gain access to the ideas and functional elements embodied in a copyrighted computer program and where there is ***a legitimate reason*** for seeking such access, disassembly is a fair use of the copyrighted work, disassembly is a fair use of the copyrighted work, as a matter of law."  *Sega*, 977 F.2d at 1527–28 (9th Cir. 1992) (emphasis added).

Here, unlike in *Sega* and *Sony*, Defendants were fully capable of creating their final product—a commercial podcast criticizing the Broadcast—without infringing on Fight Club's copyright rights.  Indeed, Defendants could have either criticized the Broadcast without showing the Broadcast, or lawfully purchased the Broadcast, like any other consumer.  But Defendants did not do this.  Instead, Defendants admittedly "pirated" or "bootlegged" the Broadcast, uploaded a copy to YouTube so others could—and did—similarly unlawfully pirate or bootleg the Broadcast, and profited therefrom.

## 2. The Intermediate Use Doctrine Applies Only Where the Copyrighted Material is Not Used in the End Product.

*Second*, the Ninth Circuit limits the "intermediate use" doctrine to those infringements which are "not ultimately used in any end product."  *Fox Broad. Co. v. Dish Network, L.L.C.*, 905 F. Supp. 2d 1088, 1106 (C.D. Cal. 2012) (finding quality assurance copies of programs not a fair use).  This makes sense, of course, given the desire to protect "intermediate" use.  Indeed, in both *Sega* and *Sony*, the final product did not contain any copyrighted material.  Here, by contrast, Defendants' final product indisputably contains copyrighted material.  Accordingly, the intermediate use doctrine does not apply to the Unlisted Video as a matter of law.

## H. The Four Factors Counsel Against Defendants' Ability to Invoke the Protections of Fair Use.

In analyzing a defendant's fair use defense, a court considers, among other

1  things, four factors:

2          (1) the purpose and character of the use, including whether

3          such use is of a commercial nature or is for nonprofit

4          educational purposes;

5          (2) the nature of the copyrighted work;

6          (3) the amount and substantiality of the portion used in

7          relation to the copyrighted work as a whole; and

8          (4) the effect of the use upon the potential market for or

9          value of the copyrighted works.

10  (17 U.S.C. § 107.)

11        **1.**    **The First Factor Counsels Strongly Against a Finding of Fair**

12             **Use.**

13       Most critical to the inquiry under the first fair-use factor is "whether and to what

14  extent the new work is 'transformative.'" *Campbell*, 510 U.S. at 579.  Specifically,

15  courts ask "whether the new work merely 'supersede[s] the objects' of the original

16  creation, or instead adds something new, with a further purpose or different character,

17  altering the first with new expression, meaning, or message." *Campbell*, 510 U.S. at

18  579.  Defendants claim that the first factor strongly favors a finding of fair use because

19  the Distribution Video contained comment and criticism.  But Plaintiff is not suing

20  Defendants as a result of the Distribution Video; rather, Plaintiff is suing Defendants

21  as a result of the Unlisted Video, which consisted of a substantial portion of the

22  Broadcast, in its original form, without any comment or criticism.  Because the

23  Unlisted Video was not in any way transformative, the first factor counsels strongly

24  against a finding of fair use.

25        **2.**    **The Second Factor Counsels Strongly Against a Finding of**

26             **Fair Use.**

27       The second statutory factor examines whether the Work is (1) creative or

28  factual; and (2) published or unpublished.  *Cariou*, 714 F.3d at 709-10 (quoting

*Blanch*, 467 F.3d at 256).  Plaintiff published the Broadcast on a limited, pay-per-view basis.  Plaintiff did not publish the Broadcast to the public at large.  Defendants, however, did.  (*See* ECF No. 26-1, at pp. 4, 15, and 21 (admitting to creating the Unlisted Video, which contained the Jake Paul v. Ben Askren fight and no comment or critique, which was viewed at least sixty-five times, and for which views Plaintiff did not receive the pay-per-view fee).)  Accordingly, the second factor also counsels strongly against a finding of fair use.

### 3. The Third Factor Counsels Strongly Against a Finding of Fair Use.

The third statutory factor asks whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole are reasonable in relation to the purpose of the copying."  *TCA*, 839 F.3d at 185 (internal ellipsis omitted) (quoting *Campbell*, 510 U.S. at 586); *see also Blanch*, 467 F.3d at 257.  As noted above, the Unlisted Video contained a substantial portion and the essential elements of the Broadcast, i.e., the Jake Paul v. Ben Askren fight itself.  Because viewers of the Unlisted Video were able to see the Jake Paul v. Ben Askren fight itself, in full and without any supplemental editing or commentary, the Unlisted Video was a market substitute for the Broadcast.  As such, the third factor counsels strongly against a finding of fair use.

### 4. The Fourth Factor Counsels Strongly Against a Finding of Fair Use.

The fourth fair use factor examines "the effect of the use upon the potential market for or value of the copyrighted work."  *Campbell,* 510 U.S. at 590 (quoting 17 U.S.C. § 107(4)).  The Supreme Court made it clear:  because a critique "may quite legitimately aim at garroting the original, destroying it commercially as well as artistically, [Citation] the role of courts is to ***distinguish*** between 'biting ***criticism*** that merely ***suppresses demand*** and ***copyright infringement*** which ***usurps it.***'"  *Campbell,* 510 U.S. at 592 (emphasis added; internal brackets omitted) (quoting *Fisher v. Dees,*

794 F.2d 432, 438 (9th Cir. 1986)).  As noted above, the Unlisted Video did not contain any commentary or critique.   To the contrary, the Unlisted Video contained a substantial portion and the essential elements of the Broadcast, i.e., the Jake Paul v. Ben Askren fight itself.  Because viewers of the Unlisted Video were able to see the Jake Paul v. Ben Askren fight itself, in full and without any supplemental editing or commentary, the Unlisted Video was a market substitute for the Broadcast.  As such, the fourth factor counsels strongly against a finding of fair use.

## I.   Defendants Implicitly Admit to Violating the Federal Communications Act.

The Federal Communications Act states, in pertinent part:  "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."  (47 U.S.C. § 605(a).)  "In other words, § 605(a) prohibits a person not entitled to a signal from assisting another's piracy of that signal."  *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995).   "[T]he 'communications' protected by § 605(a) include satellite television signals[,]" like the Broadcast. *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008).

To state a claim under Section 605(a) of the Federal Communications Act, "Plaintiff must establish it was the party aggrieved by Defendant's actions," and "[i]n addition, Plaintiff must show Defendant intercepted a wire or radio program and published it without permission."  *Joe Hand Promotions, Inc. v. Garl*, No. 1:12-CV-00672-LJO, 2013 WL 3422487, at *3 (E.D. Cal. July 8, 2013), *report and recommendation adopted*, No. 1:12-CV-00672-LJO, 2013 WL 3863937 (E.D. Cal. July 24, 2013).  Plaintiff has done both of these things.

### 1.   Plaintiff Established It Was the Party Aggrieved by Defendants' Actions.

A person aggrieved for purposes of the Federal Communications Act includes

1  "any person with proprietary rights in the intercepted communication by wire or radio,

2  including wholesale or retail distributors of satellite cable programming, and, in the

3  case of a violation of paragraph (4) of subsection (e), shall also include any person

4  engaged in the lawful manufacture, distribution, or sale of equipment necessary to

5  authorize or receive satellite cable programming."  (47 U.S.C. § 605(d)(6).)  As the

6  copyright owner and publisher of the Broadcast, Triller has propriety rights in the

7  Broadcast and is therefore a person aggrieved for purposes of the Federal

8  Communications Act.  (SAC, ¶ 1.)  And, as discussed above, Plaintiff alleges and

9  Defendants admit that they intercepted the Broadcast and re-uploaded the Broadcast

10  to YouTube.  (ECF No. 26-1, at p. 1 ("TEI uploaded an excerpt of the Broadcast . . .

11  onto YouTube as an 'unlisted' video . . . [which] could only be accessed via hyperlink

12  or manually entering the URL").)

### 2.      Plaintiff Alleges Defendant Intercepted a Wire or Radio Program and Published It Without Permission.

15          Defendants claim that "Triller's FCA claims fail because the SAC concedes that

16  the Broadcast was transmitted to the public on 'online platforms' (*i.e.*, the internet)."

17  (ECF No. 26-1, at p. 23.)  Once again, Defendants are mistaken.  Plaintiff alleges that

18  the Broadcast was "exhibited via closed circuit television *and encrypted satellite*

19  *signal*. . . ."  (ECF No. 24, at ¶ 1.)  Plaintiff further alleges that Defendants illegally

20  obtained the Broadcast.  (ECF No. 24, at ¶ 4 (Defendants did not purchase the

21  Broadcast, but rather publicly admitted to having unlawfully 'bootlegged' or 'pirated'

22  the Broadcast.").)  This is in stark contrast to the authority upon which Defendants

23  rely, where the court explained that the plaintiff "*d[id] not allege that Justin.tv*

24  *actually intercepted or received a cable or satellite broadcast*, i.e., a television signal

25  from a television cable operator over cable infrastructure or a radio signal transmitted

26  by satellite," but rather "allege[d] that Justin.tv users received a cable or satellite

27  broadcast (*without allegations to the legality of the reception*) and then sent a digital

28  copy of that broadcast by internet video stream to Justin.tv for general public

availability." (*Zuffa, LLC v. Justin.tv, Inc.*, 838 F. Supp. 2d 1102, 1106–07 (D. Nev. 2012) (emphasis added); *see also* ECF No. 26-1, at p. 23.)

### J.     Plaintiff's Alter-Ego Allegations Are Sufficient.

"Before the [alter ego] doctrine may be invoked, two elements must be established:  (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 326 (C.D. Cal. 2004) (citations omitted).  As described below, Plaintiff has pleaded—and will prove—that TEI and Teddy Fresh are alter egos of Ethan and Hila Klein.

TEI is a California corporation and, until this action was initiated, its corporate offices were located at 5535 Balboa Blvd., Ste. 222, Encino, CA 91316.  (SAC, ¶ 13; Gura Decl., ¶ 3.)  Ethan Klein is the Chief Executive Officer and Chief Financial Officer of TEI.  (*Id.*, ¶ 15; Gura Decl., 3.)  Hila Klein is the Secretary and sole Director of TEI.  (*Id.*, ¶ 16; Gura Decl., ¶ 3.)  TEI has no other officers or directors.  (Gura Decl., ¶ 3.)

Teddy Fresh is a California corporation with its corporate offices located at 5535 Balboa Blvd., Ste. 222, Encino, CA 91316.  (SAC, ¶ 14; Gura Decl., ¶ 4.)  Hila Klein is the Chief Executive Officer, Chief Financial Officer, and sole Director of Teddy Fresh.  (*Id.*, ¶ 16; Gura Decl., ¶ 4.)  Ethan Klein is the Secretary of Teddy Fresh.  (*Id.*, ¶ 15; Gura Decl., ¶ 4.)  Teddy Fresh has no other officers or directors.  (Gura Decl., ¶ 4.)

TEI produces the H3 Podcast, which is available at the YouTube channel located at https://www.youtube.com/channel/UCLtREJY21xRfCuEKvdki1Kw (the "H3 Podcast" and the "YouTube Channel," respectively).  (SAC, ¶ 13.)  TEI earns profits, from the H3 Podcast and YouTube Channel, including via (i) the YouTube Partner Program, (ii) sponsorships from unaffiliated third-party individuals and entities, and (iii) the sale of Teddy Fresh merchandise.  (*Id.*)  Indeed, Defendants use

the H3 Podcast and YouTube Channel to advertise and promote Teddy Fresh, including by wearing Teddy Fresh apparel and accessories on the H3 Podcast, referencing Teddy Fresh apparel and accessories on the H3 Podcast, and including clickable links to the Teddy Fresh webpage and Teddy Fresh social media accounts on the YouTube Channel and in the description for each episode of the H3 Podcast. Defendants also make no distinction between themselves and their businesses on social media. Indeed, Mr. Klein's Twitter handle is "@h3h3productions." Mr. Klein uses the @h3h3productions handle, which has more than 2.4 million followers, the re-Tweet—or promote to a wider audience—the H3 Podcast's Twitter handle, @theh3podcast, which has only approximately 330,000 followers.

Defendants used and continue to use TEI and Teddy Fresh to reap profits from their unlawful use of Plaintiff's copyrighted materials in myriad ways. Most obviously, Defendants' YouTube Channel received more views than it otherwise would have, thereby generating additional advertising revenue. In addition, as a result of these additional views, Teddy Fresh received more interest and sold more products than it otherwise would have. These profits flowed directly into the pockets of TEI's and Teddy Fresh's sole officers and directors: Ethan and Hila Klein.

**K.    To The Extent the Court is Inclined to Dismiss Any of Plaintiff's Causes of Action as to Any Defendant, Plaintiff Respectfully Requests Leave to Amend.**

If the Court is inclined to grant the Motion, Plaintiff seeks leave to amend its complaint. Federal Rule of Civil Procedure 15(a) makes clear that leave to amend a complaint "shall be freely given when justice so requires." (Fed. R. Civ. P. 15(a).)

This standard has been described as "generous." *U.S. v. Corinthian Colleges*, 655 F3d 984, 995 (9th Cir. 2011). Indeed, "a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). This is particularly true where a Court grants a motion to dismiss without first

holding an evidentiary hearing. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). Moreover, Defendants cannot show that an amended complaint will be futile, cause prejudice, or undue delay.

## IV.   CONCLUSION

For the reasons specified herein, and as supported by the declarations and evidence submitted concurrently herewith, Plaintiff respectfully requests the Court deny Defendants' Motion to Dismiss.

Dated: October 6, 2021

NOVIAN & NOVIAN, LLP
Attorneys at Law

By:   /s/ Alexander Brendon Gura
FARHAD NOVIAN
MICHAEL O'BRIEN
ALEXANDER BRENDON GURA

*Attorneys for Plaintiff Triller Fight Club II LLC*