Lincoln D. Bandlow (SBN: 170449)
Lincoln@BandlowLaw.com
Rom Bar-Nissim (SBN: 293356)
Rom@BandlowLaw.com
**Law Offices of Lincoln Bandlow, P.C.**
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: 310.556.9680
Facsimile: 310.861.5550

Attorneys for Defendants
Ted Entertainment, Inc., Teddy Fresh, Inc.,
Ethan Klein and Hila Klein

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRILLER FIGHT CLUB II LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>TED ENTERTAINMENT, INC., a California corporation; TEDDY FRESH, INC., a California corporation; ETHAN KLEIN, an individual; HILA KLEIN, an individual; and DOES 1-10<br><br>Defendants. | Case No.: 2:21-cv-03942-JAK-KS<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)**<br><br>Assigned to: Hon. John A. Kronstadt<br><br>Hearing:<br>Date: November 22, 2021<br>Time: 8:30 a.m.<br>Place: Courtroom 10B |

# **TABLE OF CONTENTS**

I. INTRODUCTION……………………………………………………………..1

II. TRILLER FAILS TO REFUTE THAT VIEWING A TRANSMISSION DOES NOT CONSTITUTE COPYRIGHT INFRINGEMENT….….…….2

III. TRILLER FAILS TO REFUTE THAT THE FAIR USE DOCTRINE BARS TRILLER'S COPYRIGHT CLAIMS….………………….………3

    A. Triller's Argument that Fair Use Cannot be Decided on a Motion to Dismiss is Devoid of Merit……..………………………………3

    B. Triller Fails to Refute that the "Intermediate Use" Doctrine Applies to the Reference Video …………………………………………….4

    C. Triller Fails to Refute that "Bad Faith" is Given Little to No Weight in the Fair Use Analysis……………………………..….......6

    D. Triller Fails to Refute that All the Fair Use Factors Favor Fair Use.....7

IV. TRILLER CONCEDES IT FAILED TO ALLEGE A "DIRECT FINANCIAL INTEREST" FOR VICARIOUS INFRINGEMENT..….…8

V. TRILLER CONCEDES ITS FCA CLAIMS LACK MERIT.…………..8

VI. TRILLER CONCEDES ITS ALTER EGO ALLEGATIONS FAIL..…..9

VII. TRILLER SHOULD NOT BE GRANTED LEAVE TO AMEND……..9

VIII. CONCLUSION...….……………………………………………………10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*American Geophysical Union v. Texaco, Inc.*,
 60 F.3d 913 (2d Cir. 1994) ................................................................................. 6

*Arrow Productions, Ltd. v. Weinstein Co. LLC*,
 44 F.Supp.3d 359 (S.D.N.Y. 2014) ..................................................................... 3

*Atari Games v. Nintendo*,
 975 F.2d 832 (Fed. Cir. 1992) ............................................................................. 7

*Brown v. Netflix*,
 462 F.Supp.3d 453 (S.D.N.Y. 2020) ................................................................... 3

*Brownmark Films, LLC v. Comedy Partners*,
 800 F.Supp.2d 991 (E.D. Wis. 2011) .................................................................. 3

*Campbell v. Acuff-Rose Music, Inc.*,
 510 U.S. 569 (1994) ............................................................................................ 6

*Columbia Pictures Indus., Inc. v. Miramax Films Corp.*,
 11 F.Supp.2d 1179 (C.D. Cal. 1998) .................................................................. 7

*Courthouse News Service v. Planet*,
 947 F.3d 581 (9th Cir. 2020) .............................................................................. 6

*Denison v. Larkin*,
 64 F.Supp.3d 1127 (N.D. Ill. 2014) .................................................................... 3

*Duffy v. Penquin Books USA, Inc.*,
 4 F.Supp.2d 268 (S.D.N.Y. 1998) ....................................................................... 6

*Faulkner Literacy Rights, LLC v. Sony Pictures Classics, Inc.*,
 953 F.Supp.2d 701 (N.D. Miss. 2013) ................................................................ 3

*Foman v. Davis*,
 371 U.S. 178 (1962) .......................................................................................... 10

*Fox Broadcasting Co. v. Dish Network, LLC*,
 905 F.Supp.2d 1088 (C.D. Cal. 2012) ................................................................ 5

*Google, LLC v. Oracle America, Inc.*,
   141 S.Ct. 1183 (2021) ............................................................................. 3, 5, 6

*Hosseinzadeh v. Klein*,
   276 F.Supp.3d 34 (S.D.N.Y. 2017) ..................................................................... 4

*Leadsinger, Inc. v. BMG Music Publishing*,
   512 F.3d 522 (9th Cir. 2008) .......................................................................... 10

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ......................................................................... 10

*Lombardo v. Dr. Seuss Enterprises, L.P.*,
   279 F.Supp.3d 497 (S.D.N.Y. 2017) ................................................................... 3

*Marano v. Metropolitan Museum of Art*,
   472 F.Supp.3d 76 (S.D.N.Y. 2020) .................................................................... 3

*NXIVM Corp. v. Ross*,
   363 F.3d 471 (2d Cir. 2004) ............................................................................. 7

*Oyewole v. Ora*,
   291 F.Supp.3d 422 (S.D.N.Y. 2018) ................................................................... 3

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) .......................................................................... 7

*Religious Tech. Center v. Netcom On-Line Comm. Service*,
   923 F.Supp. 1231 (N.D. Cal. 1995) .................................................................... 7

*Sega Enterprises Ltd. v. Accolate, Inc.*,
   977 F.2d 1510 (9th Cir. 1992) ........................................................................... 5

*Shell v. City of Radford, Virginia*,
   351 F.Supp.2d 510 (W.D. Va. 2005) .................................................................. 3

*Sony Computer Entertainment, Inc. v. Connectix Corp.*,
   203 F.3d 596 603-608 (9th Cir. 2000) ................................................................ 5

*U.S. Bank v. Village at Lakeridge*,
   138 S.Ct. 960 (2018) ......................................................................................... 3

*Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*,
   342 F.3d 191 (3d Cir. 2003) .............................................................................. 3

*Whitaker v. Tesla Motors, Inc.*,
 985 F.3d 1173 (9th Cir. 2021) .................................................................................. 8

*Yang v. Mic Network, Inc.*,
 405 F.Supp.3d 53 (S.D.N.Y 2019) ........................................................................... 3

**Treatises**

W. Patry, *Patry on Fair Use*, § 3:52 (2021) ........................................................ 5, 10

Defendants Ted Entertainment, Inc. ("TEI"), Teddy Fresh, Inc. ("Teddy Fresh"), Ethan Klein ("Ethan") and Hila Klein ("Hila") (collectively, "Defendants") hereby submit their Reply Brief ("Reply") in support of their Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to F.R.C.P. 12(b)(6) ("Motion").

# I. INTRODUCTION

The Opposition ("Opp.") of plaintiff Triller Fight Club II, LLC ("Triller") effectively concedes that its Second Amended Complaint ("SAC") is devoid of merit. Triller does not dispute that the H3 Podcast episode, entitled *Jake Paul Fight Was A Disaster – H3 Podcast #244* (the "4/22/21 Podcast"), made a fair use of Triller's copyrighted work *Jake Paul vs. Ben Askren* (the "Broadcast"). Instead, in a furtive attempt to keep its claims on life support, Triller myopically focuses on the excerpt of the Broadcast referred to in the 4/22/21 Podcast (the "Reference Video").

***Both Copyright Claims***: *First,* Triller concedes that watching a transmission does not result in copyright infringement. Instead, Triller irrelevantly argues that the Broadcast was fixed. *Second*, Triller argues that fair use cannot be decided on a motion to dismiss. Numerous cases, however, have decided fair use on a motion to dismiss and the Supreme Court recently affirmed that fair use must be decided by a judge. *Third*, Triller argues that unauthorized access to a work is dispositive (or at least highly probative) of fair use. But Triller relies on decisions that bely this position or pre-date the Supreme Court expressing "suspicion" regarding the role of bad faith in the fair use analysis. *Fourth*, Triller mischaracterizes the law governing reverse engineering as the law governing intermediate copying. Moreover, Triller fails to address cases applying the intermediate use doctrine to different contexts, which demonstrate that the Reference Video is a fair use. *Fifth*, Triller's fair use analysis focuses solely on the Reference Video in isolation without examining its use in the 4/22/21 Podcast. Not only does Triller fail to cite any legal authority for its position, Triller fails to refute Defendants' citations showing the Reference Video must be analyzed in the context of the 4/22/21 Podcast.

*Vicarious Infringement Claim*: Triller fails to demonstrate a direct financial benefit to Defendants from any purported infringement. Instead, Triller points to profits from the 4/22/21 Podcast. But this theory fails to demonstrate a causal connection between profits and infringement because Triller concedes the 4/22/21 Podcast made a fair use of the Reference Video and, therefore, the Broadcast.

*Federal Communications Act ("FCA") Claim*: Triller's sole argument to save its FCA claim is that the SAC alleged the Broadcast was transmitted via cable and satellite. But this argument fails to refute that: the SAC alleged the Broadcast was transmitted over the Internet; the FCA does not apply to the Internet; the SAC does not allege how Defendants intercepted the Broadcast; or the admission in the 4/22/21 Podcast that the Broadcast was viewed on the Internet.

*Alter-Ego*: Triller concedes its alter ego allegations fail by relying on extrinsic evidence or "facts" not alleged in the SAC. Further, these "facts" fail to show a unity of interest or an inequitable result to justify piercing the corporate veil.

For the reasons stated in the Motion and this Reply, Defendants respectfully request that this Court grant the Motion and dismiss the SAC with prejudice.

## II. TRILLER FAILS TO REFUTE THAT VIEWING A TRANSMISSION DOES NOT CONSTITUTE COPYRIGHT INFRINGEMENT

Defendants' Motion explained that Triller's direct and vicarious infringement claims fail because: (1) viewing a transmission does not constitute infringement unless the viewer fixes a copy of the work simultaneously with the transmission; (2) streaming a video over the internet does not result in fixation; (3) the SAC, and the documents incorporated by reference by the SAC, both demonstrate the Reference Video was fixed after the April 17, 2021 transmission of the Broadcast; and (3) Triller does not and cannot allege that third-parties simultaneously fixed the Reference Video when streaming it from YouTube. Motion, Section III.B.

Triller fails to dispute any of these arguments. Opp., Section III.D. Instead, Triller mischaracterizes Defendants' argument as concerning whether Triller

simultaneously fixed the Broadcast with its transmission. Opp., pp. 9:5-10:14. This is not what Defendants argued and is irrelevant regarding whether Triller has adequately pled third-party infringement for its vicarious infringement claim or that watching the Broadcast on April 17, 2021 constitutes direct infringement. Therefore, Triller concedes these claims fail as a matter of law.

### III. TRILLER FAILS TO REFUTE THAT THE FAIR USE DOCTRINE BARS TRILLER'S COPYRIGHT CLAIMS

#### A. Triller's Argument that Fair Use Cannot be Decided on a Motion to Dismiss is Devoid of Merit

Triller falsely argues that fair use cannot be decided on a motion to dismiss. Opp., Section III.E. To the contrary, courts routinely grant motions to dismiss based on fair use.[1] Further, the Supreme Court affirmed that "the ultimate question whether [the] facts showed a 'fair use' is a legal question for judges to decide." *Google, LLC v. Oracle America, Inc.*, 141 S.Ct. 1183, 1199 (2021). When, as here, the Court must decide legal (as opposed to factual) issues, they must be decided by the Court.

> We have explained that a reviewing court should try to break such a question into its separate factual and legal parts, reviewing each according to the appropriate legal standard. But when a question can be reduced no further, we have added that "the standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work."

*Id.* (*quoting U.S. Bank v. Village at Lakeridge*, 138 S.Ct. 960, 967 (2018)).

Here, there are no disputed facts. Triller does not dispute that the items identified in Defendants' Request for Judicial Notice ("RJN") are judicially noticeable or incorporated by reference in the SAC: (1) the Broadcast; (2) the 4/22/21 Podcast; (3) the Reference Video; (4) the webpages for the 4/22/21 Podcast

---

[1] *See e.g.*, *Marano v. Metropolitan Museum of Art*, 472 F.Supp.3d 76 (S.D.N.Y. 2020); *Yang v. Mic Network, Inc.*, 405 F.Supp.3d 53 (S.D.N.Y. 2019); *Faulkner Literary Rights, LLC v. Sony Pictures Classics, Inc.*, 953 F.Supp.2d 701 (N.D. Miss. 2013); *Brownmark Films, LLC v. Comedy Partners*, 800 F.Supp.2d 991 (E.D. Wis. 2011); *Lombardo v. Dr. Suess Enterprises, L.P.*, 279 F.Supp.3d 497 (S.D.N.Y. 2017); *Brown v. Netflix*, 462 F.Supp.3d 453 (S.D.N.Y. 2020); *Denison v. Larkin*, 64 F.Supp.3d 1127 (N.D. Ill. 2014); *Arrow Productions, Ltd. v. Weinstein Co. LLC*, 44 F.Supp.3d 359 (S.D.N.Y. 2014); *Shell v. City of Radford, Virginia*, 351 F.Supp.2d 510 (W.D. Va. 2005); *Oyewole v. Ora*, 291 F.Supp.3d 422 (S.D.N.Y. 2018).

and Reference Video or their contents; or (5) YouTube's definition of an "Unlisted Video" or requirements for monetization.[2] *Compare* RJN *with* Opposition to Defendants' Request for Judicial Notice ("Opp. to RJN").

Therefore, the factual issues "can be reduced no further" regarding whether: (1) the 4/22/21 Podcast (by using the Reference Video) commented and critiqued the Broadcast; (2) the Broadcast was a published and a factual work; (3) the amount and substantiality that the 4/22/21 Podcast used of the Broadcast (through the Reference Video) was reasonable in light of the 4/22/21 Podcast's critical purpose; and (4) whether the 4/22/21 Podcast's criticism and commentary of the Broadcast (through the Reference Video) resulted in market harm cognizable under the Copyright Act.[3]

Therefore, since deciding the Motion "entails primarily legal work," this Court should (and must) decide the issue of fair use on this Motion.

### B. Triller Fails to Refute that the "Intermediate Use" Doctrine Applies to the Reference Video

Triller does not dispute that the 4/22/21 Podcast made a fair use of the Reference Video (and, therefore, the Broadcast). Opp., Section III.G. Instead, Triller argues that the interim copy of the Reference Video should be examined in isolation from its use in the 4/22/21 Podcast.

---

[2] Triller only objects to various filings from *Triller, Inc. v. Filmdaily.com* (Case No. 2:21-cv-03502-PA-RAO) and the initial complaint in the action entitled *Triller, Inc. v. Ted Entertainment, Inc.* (Case No. Case No. 21 SMCV01225). Triller claims these filings are irrelevant and prejudicial (but not "unfairly prejudicial" as required by Federal Rule of Evidence 403). Opp. to RJN. These filings, however, are highly relevant to whether Triller should be granted leave to amend. Section, IIV, *infra*.

[3] Triller's reliance on *Hosseinzadeh v. Klein* is misplaced because that case was decided solely based upon the allegedly infringing and infringed videos. 276 F.Supp.3d 34, 39-40, 45-47 (S.D.N.Y. 2017). These videos were also before the Court on the parties' cross-motions for judgment on the pleadings, illustrating that discovery contributed noting to the resolution of the dispute. *Hosseinzadeh v. Klein et al.* (Case No. 1:16-cv-03081-KBF), Dkt. Nos. 52-55, 61-63, 70, 73, 79. It is also worth noting that the original motion to dismiss did not address fair use. *Id.* Dkt. Nos. 15-18. If anything, *Hosseinzadeh* illustrates that fair use should be decided on a motion to dismiss when, like here, it can be decided solely based on the works at issue. Not only can this case be decided solely based on the Broadcast, Reference Video and 4/22/21 Podcast, the additional materials that are judicially noticeable and incorporated by reference in the SAC emphasize this point.

Noted copyright scholar, William F. Patry, says this about Triller's argument: "Focusing on interim copying as the sole basis for infringement should be an embarrassment, the last refuge of those who do not have a legitimate claim." W. Patry, *Patry on Fair Use* ("Patry"), § 3:52 (2021).

Defendants' Motion explained that: (1) "intermediate copying" or copying as a "preliminary step" to create a fair use work qualifies as fair use; (2) the intermediate copy must be examined in the context of the final use; (3) an intermediate copy qualifies as fair use when its "primary purpose" is to create a fair use work; (4) the Reference Video was used in the 4/22/21 Podcast; (5) the URL to the Reference Video was highly inaccessible; and (6) only .0065% of those who viewed the 4/22/21 Podcast viewed the Reference Video. Motion, Section III.C.1.

Triller fails to dispute any of these points. Opp. Section III.G. Instead, Triller misrepresents the law governing reverse engineering as the law governing intermediate use. "Where disassembly is the ***only way to gain access to the ideas and functional elements embodied in a <u>computer program</u>***, and where there is a legitimate reason for seeking such access, disassembly is a fair use of the copyrighted work." *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 602 (9th Cir. 2000) (original emphasis) (*quoting Sega Enterprises, Ltd. v. Accolade, Inc.*, 877 F.2d 1510, 1527-28 (9th Cir. 1992)).[4] Indeed, Triller's argument is divorced from the Supreme Court's mandate that fair use is a context sensitive inquiry. *Google*, 141 S.Ct. at 1198-99 (citing *Sega* and *Sony* employing the intermediate use doctrine for the proposition that the fair use doctrine carries "out its basic purpose by providing a context-based check that can help to keep a copyright monopoly within its lawful bounds.")

The varying application of the intermediate use doctrine to different contexts

---

[4] *Fox Broadcasting Co. v. Dish Network, LLC*, 905 F.Supp.2d 1088, 1103 (C.D. Cal. 2012) ("Like the QA copies here, the disassembly copies were not used in the end product or for any purpose beyond ascertaining the object code"). Further, *Fox Broadcasting* did not create a requirement that intermediate copies could not be used in the final work. *Id.* ("Dish makes copies of protected works and its does ***not*** do so in order to create unique, transformative works") (emphasis added).

is illustrated by Defendants' citation to *American Geophysical Union v. Texaco, Inc.*, 60 F.3d 913 (2d Cir. 1998) – which Triller completely ignores. *Compare* Motion, Section III.C.1. *with* Opp., Section III.G. In the context of research, an intermediate copy constitutes a fair use when it is cited or used in the creation of the new work. *American Geophysical Union*, 60 F.3d at 919-920 & fns. 6-7.; *Duffy v. Penguin Books USA, Inc.*, 4 F.Supp.2d 268, 274 (S.D.N.Y. 1998) (denying leave to amend to allege intermediate copying of plaintiff's entire work during the defendant's research when the final work was as a fair use of plaintiff's work).

Indeed, Triller's approach to intermediate copying would lead to absurd results that are inconsistent with the Copyright Act. Intermediate copies used to prepare a documentary, news report or critical work could never be shown in the final version without exposing the secondary user to a copyright claim. Indeed, this very Court would be exposed to a copyright infringement claim by fulfilling its duty to allow the public to inspect and copy court filings in this matter, since the Broadcast would constitute as an intermediate copy for such inspection and copying. *Courthouse News Service v. Planet,* 947 F.3d 581, 591 (9th Cir. 2020).

In sum, Triller's approach to "intermediate use" is inapplicable, inapposite and in direct conflict with the purpose of the fair use doctrine: "to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Google*, 141 S.Ct. at 1196.

    **C.**    **Triller Fails to Refute that "Bad Faith" is Given Little to No Weight in the Fair Use Analysis**

Defendants' Motion explained that: (1) the Supreme Court has expressed "suspicion" on the role of "bad faith" in the fair use analysis; and (2) authorized access to the work is not a precondition to invoke fair use. Motion, Section III.C.2.

Triller does not address Defendants' citations to *Google* or *Campbell v. Acuff Rose Music, Inc.*, 510 U.S. 569, 585 fn. 18 (1994). Instead, Triller blithely and incorrectly dismisses them as "misrepresentations and out-of-context quotations of

existing case law." Opp., p.13, fn. 1. Further, Triller primarily relies on decisions predating the Supreme Court's decision in *Campbell* and the post-*Campbell* decisions that Triller does cite support Defendants' argument.[5] Opp. Section III.F.

Therefore, Triller's "bad faith" argument is devoid of merit.

### D. <u>Triller Fails to Refute that All the Fair Use Factors Favor Fair Use</u>

Defendants' Motion explained in painstaking detail how each fair use factor favored the 4/22/21 Podcast's use of the Reference Video (and, therefore, the Broadcast) for purposes of commentary and criticism. Motion, Section III.C.2-5.

Triller does not dispute Defendants' analysis. Opp., Sections III.H. Instead, Triller analyzes the Reference Video in isolation and without any reference to the Reference Video's use in the 4/22/21 Podcast. *Id.*

Triller fails to provide any legal citation to support analyzing the Reference Video in isolation; rather, Triller's approach is based on its argument that bad faith is dispositive of fair use and that the intermediate use doctrine does not apply. Opp., Sections III.F-H. As discussed above and in the Motion, Triller's arguments are devoid of merit. Motion, Section III.C; Section III.B, *supra*.[6]

In sum, Triller fails to refute that the 4/22/21 Podcast made a fair use of the Reference Video (and, therefore, the Broadcast) as a matter of law.

---

[5] *Religious Tech. Center v. Netcom On-Line Comm. Service*, 923 F.Supp. 1231, 1244 fn. 14 (N.D. Cal. 1995) ("*Campbell*…hardly endorses the good faith requirement"); *Columbia Pictures Indus., Inc. v. Miramax Films Corp.*, 11 F.Supp.2d 1179, 1187-88 (C.D. Cal. 1998) (not mentioning bad faith); *NXIVM Corp. v. Ross* 363 F.3d 471, 478-79 (2d Cir. 2004) (despite unauthorized access, first factor favored defendants in light of "transformative nature of the secondary use as criticism"). Also, Triller misrepresents *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1164. fn. 8 (9th Cir. 2007) where "commercial exploitation" was wholesale copying for a commercial purpose, such as "providing scenes from copyrighted movies without authorization" and "desire to replicate a competitor's computer game." *Id.* (citing *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 198-200 (3d Cir. 2003); *Atari v. Nintendo*, 975 F.2d 832, 843 (Fed. Cir. 1992)).

[6] Without any legal citation for support, Triller argues that the Broadcast is unpublished because it was offered on a limited, pay-per-view basis. Opp., Section III.H.2. Triller's argument is meritless because a work is "published" for purposes of fair use when it had its "first public appearance" – which Triller's copyright registration for the Broadcast states was April 17, 2021. Motion, Section III.C.3.

## IV. TRILLER CONCEDES IT FAILED TO ALLEGE A "DIRECT FINANCIAL INTEREST" FOR VICARIOUS INFRINGEMENT

Defendants' Motion explained that Triller failed to allege Defendants had a "direct financial interest in the infringing activity" for its vicarious infringement claim because: (1) this element requires a "causal relationship between the infringing activity and any financial benefit [Defendants] reaped"; (2) the Reference Video did not have any in-video promotions; and (3) the Reference Video was uploaded to the *Zach the Sound Lad* channel, which could not monetize the Reference Video because the channel did not have the requisite number of subscribers pursuant to YouTube's monetization policy. Motion, Section III.D.

Again, Triller does not dispute any of these points. Opp., Section III.C. Instead, Triller argues that the direct financial benefit was that the 4/22/21 Podcast was monetized.[7] *Id.* But, as discussed above, Triller does not dispute that the 4/22/21 Podcast made a fair use of the Broadcast. Section, III.D, *supra*; Opp., Section III.H. As such, there is an express lack of "a causal relationship between the infringing activity and any financial benefit a defendant reaps." Motion, Section III.D.

Therefore, Triller's vicarious infringement claim fails as a matter of law.

## V. TRILLER CONCEDES ITS FCA CLAIMS LACK MERIT

Defendants' Motion explained that Triller's FCA claim fails because: (1) Triller pleaded that the Broadcast was transmitted to public via the Internet; (2) the FCA does not apply to the Internet; (3) in the 4/22/21 Podcast, Ethan states the Broadcast was viewed via "link" (*i.e.*, the Internet); and (4) the Reference Video did not extend the actual transmission of the Broadcast. Motion, Section, III.E.

Triller does not dispute these points. Opp., Section III. Instead, it argues that the SAC alleges the Broadcast was also "exhibited via closed circuit television and

---

[7] Triller also argues that this issue will be clarified in discovery, but fails to identify what facts would be yielded in discovery to support this element of vicarious infringement. Opp., III.C. This concedes Triller's claim cannot survive a motion to dismiss because Triller is "rely[ing] on anticipated discovery to satisfy" its pleading requirements, rather than asserting "well-pleaded factual allegations to advance to discovery." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021).

encrypted satellite signal." *Id*. But this argument fails to refute: (1) the SAC does not allege how Defendants viewed the Broadcast; (2) the admission the Broadcast was viewed on the Internet; (3) how Defendants extended the actual cable or satellite transmission of the Broadcast; or (4) how these conclusory allegations can survive a motion to dismiss. Therefore, Triller concedes its FCA claim fails as a matter of law.

## VI. TRILLER CONCEDES ITS ALTER-EGO ALLEGATIONS FAIL

Triller concedes that, to allege that TEI is the alter ego of Teddy Fresh, Ethan and Hila, Triller was required to allege facts demonstrating: "(1) a unity of interest and ownership between the corporation and its equitable owners that the separate personalities of the corporation and the shareholders do not in reality exist; and (2) an inequitable result if the acts in question are treated as those of the corporation alone." Opp., Section III.J; Motion, Section III.F.

As to the first element, Triller concedes the SAC is deficient by relying either on extrinsic evidence or citing unsupported "facts" without any reference to the SAC or evidence. Opp., Section III.J. Further, these "facts" do not demonstrate a unity of interest. At best, they only demonstrate that TEI and Teddy Fresh are separate businesses that have a business relationship with each other.

As to the second element, Triller further concedes the SAC is deficient by arguing – without any citation to the SAC or evidence – that: (1) TEI and Teddy Fresh reaped profits from the purported infringement; and (2) TEI received more advertiser revenue and Teddy Fresh experienced more sales as a result of the infringement. Opp., Section III.J. Even assuming these unfounded statements are true (which they are not), Triller still fails to demonstrate an "inequitable result."

Therefore, Triller concedes its alter-ego allegations fail as a matter of law.

## VII. TRILLER SHOULD NOT BE GRANTED LEAVE TO AMEND

Triller begs this Court to be given "at least one chance to amend [its] deficient complaint." Opp., Section III.K. Triller has had *five* opportunities to draft a well-pleaded complaint; this would be Triller's *sixth*. Motion, Section II.C. Triller

does not need another opportunity to draft a fatally defective complaint.

Additionally, this Court may deny leave to amend due to Triller's "undue delay, bad faith or dilatory motive on the party of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by the virtue of allowance of the amendment, and futility of amendment." *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008) (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962)).

All these justifications are present here. First, there is a "futility of amendment" because no amount of (in)artful pleading will cure the fatal defects of the SAC. Second, Triller was given multiple opportunities to cure these defects (including by Defendants and Judge Anderson) – which highlights Triller's "repeated failure to cure deficiencies by amendments previously allowed." Dkt. Nos. 22-23; Motion, Section II.C. Third, Triller's failed attempts to draft a well-pleaded complaint and material misrepresentations of law and fact demonstrate "bad faith," "dilatory motive" and "undue delay." Finally, leave to amend will result in "undue prejudice" to Defendants by forcing them to litigate Triller's patently frivolous claims. Therefore, Triller should be denied leave to amend.

## VIII. CONCLUSION

Triller's arguments are an "embarrassment" and its "last refuge" because it does "not have a legitimate claim." Patry, § 3:52. Further, they are based "upon a wholly erroneous understanding of the extent of copyright protection." *Litchfield v. Spielberg*, 736 F.2d 1352, 1358 (9th Cir. 1984). As such, Defendants respectfully request this Court to grant their Motion and dismiss the entire SAC with prejudice.

Dated: October 20, 2021
**Law Offices of Lincoln Bandlow**

By _____
LINCOLN D. BANDLOW
ROM BAR-NISSIM
Attorneys for Defendants