1  Lincoln D. Bandlow (SBN: 170449)
   Lincoln@BandlowLaw.com
2  Rom Bar-Nissim (SBN: 293356)
   Rom@BandlowLaw.com
3  **Law Offices of Lincoln Bandlow, P.C.**
   1801 Century Park East, Suite 2400
4  Los Angeles, CA 90067
   Telephone: 310.556.9680
5  Facsimile: 310.861.5550

6  Attorneys for Defendants
   Ted Entertainment, Inc., Teddy Fresh, Inc.,
7  Ethan Klein and Hila Klein

8

9                  **UNITED STATES DISTRICT COURT**

10                 **CENTRAL DISTRICT OF CALIFORNIA**

11

12 | TRILLER FIGHT CLUB II LLC, a
   | Delaware limited liability company,
13 |
   |                                    Plaintiff,
14 |
   |
15 |        v.
   |
16 | TED ENTERTAINMENT, INC., a
   | California corporation; TEDDY
17 | FRESH, INC., a California
   | corporation; ETHAN KLEIN, an
18 | individual; HILA KLEIN, an
   | individual; and DOES 1-10
19 |
   |                                  Defendants.
20 |
21
22
23
24
25
26
27
28

Case No.:  2:21-cv-03942-JAK-KS

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE ALTER EGO AND VICARIOUS COPYRIGHT INFRINGEMENT CLAIMS IN PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)**

[Notice of Motion; Memorandum of Points and Authorities; Declaration of Lincoln D. Bandlow; Notice of Lodging; [Proposed] Order; and [Proposed] Judgment filed concurrently herewith]

Assigned to:  Hon. John A. Kronstadt

Date: January 8, 2023
Time: 8:30 a.m.
Place: Courtroom 10B

DEFENDANTS' REQUEST FOR JUDICIAL NOTICE ISO MOTION TO DISMISS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Rule 201 of the Federal Rules of Evidence ("FRE"), defendants Ted Entertainment, Inc. ("TEI"), Teddy Fresh, Inc. ("Teddy Fresh"), Ethan Klein ("Ethan") and Hila Klein ("Hila") (collectively, "Defendants") respectfully request that this Court take judicial notice of the following: (1) materials filed on September 6, 2021 with Defendants' Compendium of Exhibits (the "9/6/21 Compendium") (Dkt. No. 26-6) and lodged on the same date with Defendants' Notice of Lodging (the "9/6/21 Notice of Lodging") (Dkt. No. 26-5) in connection with Defendants' motion to dismiss (Dkt. No. 26), for which the Court granted judicial notice of in its September 15, 2023 order (the "9/15/23 Order") (Dkt. No. 32) and (2) materials concurrently-filed with the October 13, 2023 Declaration of Lincoln D. Bandlow (the "10/13/23 LDB Decl." or "10/13/23 LDB Declaration") and Notice of Lodging (the "10/13/23 Notice of Lodging").

On September 6, 2021, Defendants requested judicial notice (the "9/6/21 RJN") (Dkt. No. 26-2) – which the Court granted in full in the 9/15/23 Order (Dkt. No. 32) – of the following materials:

1.     The May 6, 2021 order (the "5/6/21 Order") of the Honorable Percy Anderson that was entered in the United States District Court for Central District of California case entitled *Triller, Inc. v. Filmdaily.com et al.* (Case No. 2:21-cv-03502-PA-RAO) (the "Filmdaily Action"), a true and correct copy of which was lodged with Defendants' 9/6/21 Compendium as **Exhibit A** (Dkt. No. 26-6, Ex. A). *See* September 6, 2021 Declaration of Lincoln D. Bandlow ("9/6/21 LDB Decl.") (Dkt. No. 26-4), ¶ 2.

2.     The audiovisual work of plaintiff Triller Fight Club II, LLC ("Triller"), entitled *Jake Paul vs. Ben Askren* (the "Broadcast"), a true and correct screen capture video of which was lodged with Defendants' 9/6/21 Compendium (Dkt. No. 26-5) and 9/6/21 Notice of Lodging as **Exhibit B** (Dkt. No. 26-6, Ex. B). *See* September 6, 2021 Declaration of Ethan Klein ("9/6/21 Klein Decl."), ¶ 2 (Dkt.

No. 26-3, ¶ 2).

3.     The webpage for TEI's podcast episode entitled *Jake Paul Fight Was A Disaster – H3 Podcast #244* (the "Distribution Video"), a true and correct printout of which was lodged with Defendants' 9/6/21 Compendium as **Exhibit C** (Dkt. No. 26-5, Ex. C).  *See* 9/6/21 Klein Decl., ¶ 3 (Dkt. No. 26-3, ¶ 3).

4.     The webpage for the unlisted video entitled *Jake Knockout* that was referred to in the 4/22/21 Podcast (the "Unlisted Video"), a true and correct printout of which was lodged with Defendants' 9/6/21 Compendium as **Exhibit D** (Dkt. No. 26-5, Ex. D). *See* 9/6/21 Klein Decl., ¶ 4 (Dkt. No. 26-3, ¶ 4).

5.     YouTube's definition of the terms "public video," "unlisted video," and "private video" from the YouTube Help article entitled "Change video privacy settings" (the "YouTube Video Privacy Article"), a true and correct printout of which was lodged with Defendants' 9/6/21 Compendium as **Exhibit E** (Dkt. No. 26-5, Ex. D). *See* 9/6/21 Klein Decl., ¶ 5 (Dkt. No. 26-3, ¶ 5).

6.     The Unlisted Video, a true and correct copy of which was lodged with Defendants' 9/6/21 Compendium (Dkt. No. 26-5) and 9/6/21 Notice of Lodging as **Exhibit F** (Dkt. No. 26-6, Ex. F).  *See* 9/6/21 Klein Decl., ¶ 6 (Dkt. No. 26-3, ¶ 6).

7.     YouTube's requirements for participation in the YouTube Partner Program from the YouTube Help article entitled "YouTube Partner Program overview & eligibility" ("YouTube Partner Eligibility Article"), a true and correct printout of which was lodged with 9/6/21 Defendants' Compendium as **Exhibit G** (Dkt. No. 26-5, Ex. G). *See* 9/6/21 Klein Decl., ¶ 7 (Dkt. No. 26-3, ¶ 7).

8.     The Distribution Video, a true and correct copy of which was lodged with Defendants' 9/6/21 Compendium (Dkt. Not. 26-5) and 9/6/21 Notice of Lodging as **Exhibit H** (Dkt. No. 26-6, Ex. H).  *See* 9/6/21 Klein Decl., ¶ 8 (Dkt. No. 26-3, ¶ 8).

9.     Triller, Inc's initial complaint that was filed in the Filmdaily Action ("Initial Filmdaily Complaint"), a true and correct copy of which was lodged with

Defendants' 9/6/21 Compendium as **Exhibit I** (Dkt. No. 26-5, Ex. I).  *See* 9/6/21 LDB Decl., ¶ 3 (Dkt. No. 26-4, ¶ 3).

10.    Judge Anderson's April 28, 2021 order to show cause that was entered in the Filmdaily Action (the "4/28/21 OSC"), a true and correct copy of which was lodged with Defendants' 9/6/21 Compendium as **Exhibit J** (Dkt. No. 26-5, Ex. J). *See* 9/6/21 LDB Decl., ¶ 4 (Dkt. No. 26-4, ¶ 4).

11.    Triller's first amended complaint that was filed in the Filmdaily Action (the "Filmdaily FAC"), a true and correct copy of which was lodged with Defendants' 9/6/21 Compendium as **Exhibit K** (Dkt. No. 26-5, Ex. K).  *See* 9/6/21 LDB Decl., ¶ 5 (Dkt. No. 26-4, ¶ 5).

12.    Triller's response to the 4/28/21 OSC ("Response to the OSC") that was filed in the Filmdaily Action, a true and correct copy of which was lodged with Defendants' 9/6/21 Compendium as **Exhibit L** (Dkt. No. 26-5, Ex. L).  *See* 9/6/21 LDB Decl., ¶ 6 (Dkt. No. 26-4, ¶ 6).

13.    The complaint of Triller, LLC against Defendants that was filed in Los Angeles Superior Court entitled *Triller, LLC v. Ted Entertainment, Inc.* (Case No. 21SMCV01225) ("Tortious Interference Action"), a true and correct copy of which was lodged with Defendants' 9/6/21 Compendium as **Exhibit O** (Dkt. No. 26-5, Ex. O).  *See* 9/6/21 LDB Decl., ¶ 10 (Dkt. No. 26-4, ¶ 10).

14.    The definition of the word "stream" from Merriam-Webster's online dictionary, a true and correct printout of which was lodged with Defendants' 9/6/21 Compendium as **Exhibit P** (Dkt. No. 26-5, Ex. P).  *See* 9/6/21 Klein Decl., ¶ 9 (Dkt. No. 26-3, ¶ 9).

The 9/15/23 Order granted Defendants' 9/6/21 RJN in full and took judicial notice of all the materials cited herein. *See* Dkt. No. 26-2, Dkt. No. 32, p. 3. Out of an abundance of caution, however, Defendants shall set forth in more detail below how these materials are properly subject to judicial notice as they are "adjudicative fact" that are "not subject to reasonable dispute" in that they are capable of accurate

and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* FRE Rule 201.

In addition to the materials cited above, Defendants also request judicial notice of the following materials:

15.     The June 9, 2023 *Fashionista* article entitled "How Hila Klein Went From YouTube Start To Fashion Designer And CEO Of Teddy Fresh" authored by Morgan Whipple (the "Fashionista Article"), a true and correct printout of which is concurrently-filed with the 10/13/23 LDB Declaration as **Exhibit Q.** 10/13/23 LDB Decl., ¶ 2, Ex. Q.

16.     The "About" section for the homepage of TEI's H3 Podcast channel on YouTube, a true and correct printout of which is concurrently-filed with the 10/13/23 LDB Declaration as **Exhibit R**. 10/13/23 LDB Decl., ¶ 3, Ex. R.

17.     The Articles of Incorporation for Teddy Fresh from the California Secretary of State's publicly available business search website, a true and correct copy of which is concurrently-filed with the 10/13/23 LDB Declaration as **Exhibit S**. 10/13/23 LDB Decl., ¶ 4, Ex. S.

18.     Hila's TikTok Page, a true and correct printout of which is concurrently-field with the 10/13/23 LDB Declaration as **Exhibit T**. 10/13/23 LDB Decl., ¶ 5, Ex. T.

19.     The June 27, 2019 TEI video from the H3 Podcast Highlights channel entitled *Teddy Fresh Summer Collection* (the "Podcast Clip"), a true and correct copy of which is concurrently-lodged with Defendants' 10/13/23 Notice of Lodging as **Exhibit U**. 10/13/23 LDB Decl., ¶ 6, Ex. U.

20.     The June 26, 2019 TEI video from the H3 Podcast channel entitled *Twitch Double Standard & Analyzing Belle Delphine's Spit – H3 Podcast #129* ("H3 Podcast No. 129) from which the Podcast Clip was derived, a true and correct copy of which is concurrently-lodged with Defendants' 10/13/23 Notice of Lodging as **Exhibit V**. 10/13/23 LDB Decl., ¶ 7, Ex. V.

21.    The webpage for the Podcast Clip, a true and correct printout of which is concurrently-filed with the 10/13/23 LDB Declaration as **Exhibit W**. 10/13/23 LDB Decl., ¶ 8, Ex. W.

22.    The webpage for H3 Podcast No. 129, a true and correct printout of which is concurrently-filed with the 10/13/23 LDB Declaration as **Exhibit X.** 10/13/23 LDB Decl., ¶ 9, Ex. X.

23.    The January 12, 2022 order granting Defendants' anti-SLAPP motion in the Tortious Interference Action and dismissing the action, a true and correct copy of which is concurrently-filed with the 10/13/23 LDB Declaration as **Exhibit Y**. 10/13/23 LDB Decl., ¶ 10, Ex. Y.

# I.    DOCUMENTS SUBJECT TO JUDICIAL NOTICE UNDER THE INCORPORATION BY REFERENCE DOCTRINE

In ruling on a F.R.C.P. Rule 12(b)(6) motion, the Ninth Circuit has repeatedly affirmed the "incorporation by reference" doctrine – whereby Courts must consider the contents of extrinsic documents in "situations in which the plaintiff's claim depends on the contents of document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document". *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).[1]

For copyright infringement actions, the allegedly infringing and infringed works identified in the complaint are properly before the court under this doctrine of incorporation by reference. *See Rearden LLC v. Walt Disney Company*, 293 F.Supp.3d 963, 969 (N.D. Cal. 2018) (incorporating various items referred to in a copyright infringement complaint, including various motion pictures); *Marcus v. ABC Signature Studios, Inc.*, 279 F.Supp.3d 1056, 1062-63 (C.D. Cal. 2017) (incorporating script and DVD of television show referred to in  the complaint);

---

[1] *See also Beverly Oaks Physicians Surgical Center, LLC v. Blue Cross and Blue Shield of Illinois*, 983 F.3d 435, 439 (9th Cir. 2020);*United States v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011 *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1405 fn. 4 (9th Cir. 1996); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994).

*Shame on You Productions, Inc. v. Elizabeth Banks*, 120 F.Supp.3d 1123, 1144-45 (C.D. Cal. 2015) (same).

When a document is incorporated by reference into the complaint, the Court "need not accept as true … allegations that contradict facts that … are referred to in the complaint." *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).[2]

In copyright infringement actions, the works that are incorporated by reference "supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 64 (2d Cir. 2010).

The very purpose of the "incorporation by reference" doctrine is to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (internal ellipses omitted) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

The following materials are incorporated by reference in Triller's Third Amended Complaint ("TAC") (Dkt. No. 36):

**The Broadcast** (Dkt. No. 26-5, Ex. B): The Broadcast is incorporated by reference in Paragraphs 1-2, 4-5, 7, 11-12, 20-28, 30-34, 36, 43-49, 48-49 and serves as the basis for all the claims alleged in the TAC.

[2] *see also Groves v. Kaiser Foundation Health Plan, Inc.*, 32 F.Supp.3d 1074, 1079 fn. 4 (N.D. Cal. 2014) ("Though a court generally is obligated to regard the well-pleaded facts of a complaint as true when deciding a Rule 12(b)(6) motion, that principle gives way when the allegations contradict documents attached to the complaint or incorporated by reference.") (citing *Knievel*, 393 F.3d at 1076; *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)); *eCash Technologies, Inc. v. Guagliardo*, 210 F.Supp.2d 1138, 1144 fn. 7 (C.D. Cal. 2001) ("The Court may disregard allegations in the First Amended Counterclaim if they contradicted by facts established by reference to documents attached as exhibits to the Counterclaim, or upon which it necessarily relies") (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1388 (9th Cir. 1987)).

**Webpage for the Distribution Video** (Dkt. No. 26-6, Ex. C): The webpage for the Distribution Video is incorporated by reference in Paragraph 5 of the TAC and serves as the basis for all of the claims alleged in the TAC.

**Webpage for the Unlisted Video** (Dkt. No. 26-6, Ex. D): The webpage for the Unlisted Video is incorporated by reference in Paragraphs 5, 24, 32 and 46 of the TAC and serves as the basis for all of the claims alleged in the TAC.

**YouTube Video Privacy Article** (Dkt. No. 26-5, Ex. E): The term "Unlisted Video" or "'Unlisted' video" is used to describe the Unlisted Video in Paragraphs 5, 24, 26, 32, 34-35, 37-38, 40, 46 and 48 in the TAC. The YouTube Video Privacy Article explains the term "unlisted video," along with the terms "public video" and "private video." Consequently, the YouTube Video Privacy Article is incorporated by reference in the TAC as the definition of that terms serves as the basis for all the claims alleged in the TAC.

**The Unlisted Video** (Dkt. No 26-5, Ex. F): The Unlisted Video is incorporated by reference in Paragraphs 5, 24, 26, 32, 34-35, 37-38, 40, 46 and 48 of the TAC and serves as the basis for all the claims alleged in the TAC.

**YouTube Partner Eligibility Article** (Dkt. No. 26-5, Ex. G): The term "YouTube Partner Program" is used in Paragraphs 3, 13, 28, 36, 38 and 49 of the TAC and serves as the basis for all of the claims alleged in the TAC. The YouTube Partner Eligibility Article explains the conditions under which a channel is eligible for the YouTube Partner Program. The YouTube Partner Eligibility Article also explains why the Unlisted Video (which is referenced in Paragraphs 5, 24, 26, 32, 34-35, 37-38, 40, 46 and 48 of the TAC and serves as the basis for all of the claims alleged in the TAC) is ineligible for the YouTube Partner Program. Consequently, the YouTube Partner Eligibility Article is incorporated by reference in the TAC as it explains the term "YouTube Partner Program" and why the Unlisted Video is ineligible for monetization under the YouTube Partner Program.

**The Distribution Video** (Dkt. No. 26-5, Ex. H): The Distribution Video is

incorporated by reference in Paragraphs 5-6, 24, 32, 37-38, 40-41 and 46-47 and serves as the basis for all of the claims alleged in the TAC.

**The Fashionista Article** (10/13/23 LDB Decl., ¶ 2, Ex. Q): The Fashionista Article is incorporated by reference in Paragraphs 17(a)(vi-vii) and serves as the basis for the alter ego allegations in the TAC.

**Webpage for the H3 Podcast Channel's "About" Section** (10/13/23 LDB Decl., ¶ 3, Ex. R): The webpage for the H3 Podcast channel's "About" section is incorporated by reference in Paragraphs 3, 5, 13-14, 17(a)(iii-v), 17(a)(vii-viii), 24, 28, 32, 36, 38-40, 46 and 49 of the TAC and serve as the basis for all of the claims alleged in the TAC.

**Webpage for Hila's TikTok Account** (10/13/23 LDB Decl., ¶ 5, Ex. T): The webpage for Hila's TikTok account is incorporated by reference in Paragraph 17(a)(ix) of the TAC and serves as the basis for the alter ego allegations in the TAC.

**The Podcast Clip** (10/13/23 LDB Decl., ¶ 6; 10/13/23 Notice of Lodging, Ex. U): The Podcast Clip is incorporated by reference in Paragraph 17(a)(v) of the TAC and serves as the basis for the alter ego allegations in the TAC.

**H3 Podcast No. 129** (10/13/23 LDB Decl., ¶ 7; 10/13/23 Notice of Lodging, Ex. V): The Podcast Clip is derived from H3 Podcast No. 129 (*see* 0:32:43-0:35:50) and, therefore, incorporated by reference in Paragraph 17(a)(v), which serves as the basis for the alter ego allegations in the TAC.

**Webpage for the Podcast Clip** (10/13/23 LDB Decl., ¶ 8, Ex. W): The URL for the Podcast Clip is incorporated by reference in Paragraph 17(a)(v) of the TAC and serves as the basis for the alter ego allegations in the TAC.

**Webpage for H3 Podcast No. 129** (10/13/23 LDB Decl., ¶ 9, Ex. X): The Podcast Clip is derived from H3 Podcast No. 129 (*see* 0:32:43-0:35:50) and the URL for the Podcast Clip is incorporated by reference in Paragraph 17(a)(v) of the TAC and serves as the basis for the alter ego allegations in the TAC.

Therefore, for the reasons stated above, this Court should grant Defendants'

request for judicial notice for the materials identified above based on the incorporation by reference doctrine.

## II.      DOCUMENTS SUBJECT TO JUDICIAL NOTICE AS PUBLIC RECORDS

It is axiomatic that courts "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 fn. 6 (9th Cir. 2006) (citing *Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)). The "articles of incorporation are a public record" when "taken from the website of the office for the Secretary of State of California." *Maxon v. Fuller Theological Seminary*, 549 F.Supp.3d 1116, 1122 (C.D. Cal. 2020).

Here, the following documents are court filings from the Filmdaily Action: (1) the 5/6/21 Order (Dkt. No. 26-6, Ex. A); (2) the Filmdaily Initial Complaint (Dkt. No. 26-6, Ex. J); (3) the Filmdaily FAC (Dkt. No. 26-6, Ex. K); (4) the 4/28/21 OSC (Dkt. No. 26-6, Ex. L); and (5) Triller's Response to the OSC (Dkt. No. 26-6, Ex. M).

In addition, the following documents are court filings from the Tortious Interference Action: (1) the complaint from the Tortious Interference Action (Dkt. No. 26-6, Ex. O); and (2) the January 12, 2022 order granting Defendants' anti-SLAPP motion (10/13/23 LDB Decl., ¶ 10, Ex. Y).

Finally, the Articles of Incorporation for Teddy Fresh were downloaded from the California Secretary of State's public business search website. 10/13/23 LDB Decl., ¶ 4, Ex. S.

Therefore, the aforementioned documents are the proper subject of judicial notice as public records.

## III.      DEFINITIONS AND WEBSITES SUBJECT TO JUDICIAL NOTICE

It is well-established that "[d]ictionary definitions are [the] proper subject for judicial notice." *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F.Supp.3d

1 | 139, 146 (N.D. Cal. 2020) (citing *Gonzalez v. Guzman*, 2017 WL 5446087, at *3 fn.

2 | 4 (S.D. Cal. Nov. 14, 2017); *Rugg v. Johnson & Johnson*, 2018 WL 3023493, at *3

3 | fn. 3 (N.D. Cal. June 18, 2018)).

4 |      Courts may also take judicial notice of the definitions for a term of art for a

5 | particular industry or company.  *See Terraza v. Safeway, Inc.*, 241 F.Supp.3d 1057,

6 | 1067 (N.D. Cal. 2017) ("the Court takes judicial notice of the definition of various

7 | investment terms, which are publicly available on the Investopedia website and the

8 | Stable Value Investment Association website").

9 |      It is equally well-established that "websites and their contents may be

10 | judicially noticed."  *Threshold Enterprises*, 445 F.Supp.3d at 146 (citing *Pacific*

11 | *Overlander, LLC v. Kauai Overlander*, 2018 WL 3821070, at *2 (N.D. Cal. Aug 10,

12 | 2018); *Caldwell v. Caldwell*, 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006);

13 | *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F.Supp.2d 974, 984 (N.D. Cal 2010);

14 | *2Die4Kourt v. Hillair Capital Management, LLC*, 2016 WL 4487895, at *1 fn. 1

15 | (C.D. Cal. Aug 23, 2016)).

16 |      Under the law set forth above, the following materials are the proper subject

17 | of judicial notice as a dictionary definition or a definition of a term of art for

18 | particular industry or company and as publicly available websites:

19 |      **The YouTube Privacy Settings Article** (Dkt. No. 26-6, Ex. E): The

20 | YouTube Privacy Settings Article contains YouTube's definitions/meanings for the

21 | terms of art "unlisted video," "public video" and "private video." Further, the

22 | YouTube Privacy Settings Article is a printout of a public website, which is available

23 | at:https://support.google.com/youtube/answer/157177?co=GENIE.Platform%3DDes

24 | ktop&hl=en#zippy=%2Cunlisted-videos%2Cprivate-videos%2Cpublic-videos.

25 |      **The YouTube Partner Program Article** (Dkt. No. 26-6, Ex. G): The

26 | YouTube Partner Program Article contains YouTube's requirements for eligibility to

27 | apply for the YouTube Partner Program and monetize YouTube videos. The

28 | requirements and terms applicable for eligibility into the YouTube Partner Program

1  are terms of art to YouTube and the YouTube Partner Program Article contains the

2  definition/meaning of those terms and requirements.  Moreover, the YouTube

3  Partner Program Article is a printout of a public website, which is available at:

4  https://support.google.com/youtube/answer/72851?hl=en.

5       **Merriam Webster's Definition of Stream** (Dkt. No. 26-6, Ex. P): The

6  Merriam Webster's definition of "stream" includes the definition of the word

7  "stream" in the digital context. Additionally, it is printout of a printout of a public

8  website, which is available at: https://www.merriam-webster.com/dictionary/stream.

9       Under the law set forth above, the following materials are the proper subject

10 of judicial notice as printouts of websites:

11      **Webpage for the Distribution Video** (Dkt. No. 26-6, Ex. C): The webpage

12 for the Distribution Video is publicly available at the URL:

13 https://youtu.be/bfKPts4BJkA.

14      **Webpage for the Unlisted Video** (Dkt. No. 26-6, Ex. D): The webpage for

15 the Unlisted Video was available on YouTube at the URL:

16 https://www.youtube.com/watch?v=-G7u36dpmL8.[3]

17      **The Distribution Video** (Dkt. No. 26-5, Ex. H): The Distribution Video is

18 publicly available at the URL: https://youtu.be/bfKPts4BJkA.

19      **Fashionista Article** (10/13/23 LDB Decl., ¶ 2, Ex. Q): The webpage for the

20 Fashionista Article is publicly available at the URL:

21 https://fashionista.com/2023/06/hila-klein-teddy-fresh-designer-career-interview

22      **H3 Podcast Channel "About" Section** (10/13/23 LDB Decl., ¶ 3, Ex. R):

23 The webpage for the "About" section of the H3 Podcast channel is publicly available

24 [3] As of May 3, 2021, the Unlisted Video was changed from "unlisted" to "private."
25 If one were to click the link to the Unlisted Video, the individual will be greeted with
   a black box that states: "Video unavailable" and "This video is private."  Currently,
26 the Unlisted Video is only accessible by TEI.  Should the Court wish to confirm the
   printout of the webpage for the Unlisted Video, Defendants can make arrangements
27 for the Court to view the webpage for the Unlisted Video with sufficient advance
   notice.

28

1  at the URL: https://www.youtube.com/@H3Podcast/about.

2  **Hila's TikTok Page** (10/13/23 LDB Decl., ¶ 5, Ex. T): The webpage for

3  Hila's TikTok webpage is publicly available at the URL:

4  https://www.tiktok.com/@hilakleinh3?lang=en.

5  **The Podcast Clip** (10/13/23 Notice of Lodging, Ex. U; 10/13/23 LDB Decl.,

6  ¶ 6): The Podcast Clip is publicly available at the URL:

7  https://www.youtube.com/watch?v=vBJy64IqHO0

8  **H3 Podcast No. 129** (10/13/23 Notice of Lodging, Ex. V; 10/13/23 LDB

9  Decl., ¶ 7): H3 Podcast No. 129 is publicly available at the URL:

10  https://www.youtube.com/watch?v=1owweBRXABQ

11  **Webpage for the Podcast Clip** (10/13/23 LDB Decl., ¶ 8, Ex. W): The

12  webpage for the Podcast Clip is publicly available at the URL:

13  https://www.youtube.com/watch?v=vBJy64IqHO0

14  **Webpage for H3 Podcast No. 129** (10/13/23 LDB Decl., ¶ 9, Ex. X): The

15  webpage for H3 Podcast No. 129 is publicly available at the URL:

16  https://www.youtube.com/watch?v=1owweBRXABQ

17  **IV.    CONCLUSION**

18  For the reasons stated above, Defendants respectfully request this Court to

19  grant their Request for Judicial Notice.

20  Dated:  October 23, 2023                    **Law Offices of Lincoln Bandlow**

21

22                                              By _____

23                                              LINCOLN D. BANDLOW
                                                ROM BAR-NISSIM
24                                              Attorneys for Defendants

25

26

27

28