UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV21-03942 JAK (KSx) | Date | January 8, 2024 |
|---|---|---|---|
| Title | Triller Fight Club II LLC v. The H3 Podcast | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS) ORDER RE MOTION TO DISMISS ALTER EGO AND VICARIOUS INFRINGEMENT CLAIMS (DKT. 41)

**I.   Introduction**

On May 10, 2021, Triller Fight Club II LLC ("Plaintiff") brought this action alleging an unlawful YouTube broadcast by defendants of a boxing event hosted by Plaintiff. Dkt. 1. On July 23, 2021, Plaintiff filed a Second Amended Complaint ("SAC"), in which Hila Klein ("H. Klein" or "Mrs. Klein"), Ethan Klein ("E. Klein" or "Mr. Klein"), Ted Entertainment, Inc. ("TEI"), Teddy Fresh Inc. ("Teddy Fresh") and Does 1-10 were named as defendants (collectively "Defendants"). Dkt. 24. The SAC advances three causes of action: (1) copyright infringement; (2) vicarious copyright infringement; and (3) violation of the Federal Communications Act, 47 U.S.C. § 605 (the "FCA"). Dkt. 24.

On September 6, 2021, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 26. On September 15, 2023, it was determined that the copyright-infringement claim against TEI and the FCA claim against TEI were adequately alleged, and the motion was denied as to them. Dkt. 32 (the "Prior Order") at 1. However, it was determined that the vicarious copyright infringement claim against TEI and all the claims against the other Defendants were not, and the motion was granted as to them, without prejudice, i.e., with leave to amend. *Id.*

On September 29, 2023, Plaintiff filed a Third Amended Complaint, which asserted the same three causes of action against each of the Defendants. Dkt. 36 (the "TAC"). On October 23, 2023, the Defendants moved to dismiss the TAC as to the claims that had been amended in response to the Prior Order. Dkt. 41 (the "Motion"). On November 17, 2023, Plaintiff filed an opposition to the Motion. Dkt. 43 (the "Opposition"). On December 4, 2023, Defendants filed a reply. Dkt. 44 (the "Reply").

On December 26, 2023, the Motion was taken **UNDER SUBMISSION** without a hearing. L.R. 7-15; Dkt. 45. For the reasons stated in this Order, the Motion is **DENIED**.

**II.   Factual Background**

The TAC alleges that Plaintiff is the copyright owner and publisher of the Triller Fight Club broadcast of the April 17, 2021, "Jake Paul vs. Ben Askren" boxing event, including the entire television broadcast of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-03942 JAK (KSx) | Date | January 8, 2024 |
| Title | Triller Fight Club II LLC v. The H3 Podcast | | |

it on closed circuit television and encrypted satellite (the "Broadcast"). TAC ¶ 1, Ex. A. It is alleged the copyright became effective on April 30, 2021, and was issued on May 4, 2021. *Id.* ¶ 1, Ex. A.

It is alleged that Defendants did not purchase the Broadcast and unlawfully received, intercepted and/or descrambled Plaintiff's satellite signal to watch the Broadcast. *Id.* ¶ 46. It is further alleged Defendants publicly admitted to having unlawfully "bootlegged" the Broadcast. *Id.* ¶ 4. It is further alleged that there is no record that Mr. Klein, Mrs. Klein, the H3 Podcast or TEI purchased a license to view the Broadcast. *Id.* ¶ 23.

It is alleged that, on April 22, 2021, Defendants uploaded to YouTube all, or a substantial portion of the Broadcast in unaltered form, as the Unlisted Video (or, equivalently, the "Reference Video"), and then publicly displayed the URL for the Unlisted Video in a video entitled "Jake Paul Fight Was A Disaster – H3 Podcast # 244" (the "Distribution Video" or the "4/22/21 Podcast"). *Id.* ¶ 24. It is alleged the Distribution Video has been viewed at least one million times, and that persons who did not purchase the Broadcast on pay-per-view were able to, and did view all or a substantial portion of the Broadcast through the Unlisted Video. *Id.* ¶¶ 25–26. It is alleged the H3 Podcast and YouTube Channel have profited from their allegedly unlawful conduct, including through the YouTube Partner Program, sponsorships from unaffiliated third parties and the sale of merchandise through businesses affiliated with Defendants, including Teddy Fresh. *Id.* ¶ 28.

      A.      Alter Ego Allegations

It is alleged that TEI and Teddy Fresh share corporate officers and directors. *Id.* ¶ 17(a). It is alleged E. Klein is the Chief Executive Officer of TEI and Secretary of Teddy Fresh. *Id.* ¶ 15. It is further alleged that H. Klein is the Secretary of TEI, and the Chief Executive Officer, Chief Financial Officer and sole director of Teddy Fresh. *Id.* ¶ 16.

It is alleged that TEI, unlike Teddy Fresh, fails to maintain adequate liability insurance to pay claims against TEI. *Id.* ¶ 17(a)(i). It is also alleged more generally that, to make TEI judgment proof, it has few assets, and those assets have limited value. *Id.* ¶ 17(a)(ii).

Plaintiff also alleges that TEI employees perform services for Teddy Fresh, notwithstanding they are not employees of Teddy Fresh. *Id.* ¶ 17(a)(v). For example it is alleged that TEI employees model Teddy Fresh garments in Teddy Fresh videos. *Id.* It is also alleged that TEI stores Teddy Fresh's merchandise in its offices. *Id.* It is further alleged that TEI's YouTube Channel contains links to a website, which is owned by Teddy Fresh, on which consumers can purchase Teddy Fresh merchandise. *Id.* ¶ 14.

It is also alleged that, in 2017, the revenue of the YouTube channel dropped 80% because YouTube recalculated the manner in which it provides advertising revenue to content creators. *Id.* ¶ 17(a)(iii), (vii). The TAC alleges that, because the YouTube channel is no longer as profitable, it is used to market Teddy Fresh. *Id.* ¶ 17(a)(iv), (viii). It also alleges that, consistent with the prior allegations as to making TEI judgment proof, Defendants have diverted over $100,000 from TEI to Teddy Fresh. *Id.* ¶ 17(a)(vii).

It is also alleged that Ms. Klein used equipment purchased by TEI to film personal videos for her personal TikTok account and to make advertisements for Teddy Fresh. *Id.* ¶ 17(a)(ix). Plaintiff alleges that Ms. Klein uses multiple pieces of equipment, including but not limited to lighting, microphones and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-03942 JAK (KSx) | Date | January 8, 2024 |
| Title | Triller Fight Club II LLC v. The H3 Podcast | | |

cameras, as well as camera, audio and other crew members from TEI, to shoot videos for Teddy Fresh without any compensation from Teddy Fresh to TEI. *Id.* ¶ 17(a)(x).

It is alleged that the activities and business of TEI and Teddy Fresh were carried out without annual meetings, and without keeping records or minutes of any proceedings, or maintaining written resolutions. *Id.* ¶ 17(d). The TAC also alleges that TEI and Teddy Fresh were so inadequately capitalized that, compared with the business done by Mr. Klein and Mrs. Klein and the risks of loss, their capitalization was illusory. *Id.* ¶ 17(b). The TAC also includes a general allegation that "many assets" of TEI and Teddy Fresh were transferred without adequate consideration to Mr. Klein and Mrs. Klein. *Id.* ¶ 17(c).

Finally, the TAC alleges that permitting the formalistic, but untrue, separate existence of TEI and Teddy Fresh, on the one hand, and Mr. and Mrs. Klein, on the other, would permit an abuse of the corporate privilege. *Id.* ¶ 18. Thus, it is alleged that this would sanction fraud, promote injustice, and otherwise aid in the commission of unlawful conduct, because Defendants were commingling assets in a manner that allowed them to utilize and freely transfer those assets among themselves. *Id.*

      B.    Vicarious Infringement Allegations

The gravamen of this claim is the allegation that the Distribution Video made it possible for at least 63 individuals, who did not purchase the Broadcast on a pay-per-view basis, to view a substantial portion of the Broadcast by accessing the Unlisted Video. TAC ¶¶ 34-35, 37.

It is alleged that Defendants profited from the conduct at issue through the YouTube Partner Program, sponsorships from unaffiliated third-party individuals and entities, and the sale of merchandise through businesses affiliated with Defendants, including Teddy Fresh. *Id.* ¶ 36. It is alleged that individuals who accessed the Unlisted Video using the information in the Distribution Video then subsequently watched the Distribution Video additional times to observe commentary on the material they had seen in the Unlisted Video. *Id.* ¶ 38. It is also alleged that the Distribution Video was monetized, so each additional view generated some revenue for Defendants. *Id.* ¶¶ 39-40. Finally, it is alleged that some or all of the individuals who watched the Unlisted Video purchased merchandise offered through the Distribution Video and/or made purchases from the sponsors of the Distribution Video. *Id.* ¶ 41.

**III.**    **Analysis**

      A.    Legal Standards

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading must allege facts that, if established, would be sufficient to show that a claim for relief is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A complaint need not include detailed factual allegations but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-03942 JAK (KSx) | Date | January 8, 2024 |
|---|---|---|---|
| Title | Triller Fight Club II LLC v. The H3 Podcast | | |

stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Fed. R. Civ. P. 12(b)(6) permits a party to move to dismiss a cause of action that fails to state a claim in accordance with the foregoing standards. It is appropriate to grant such a motion only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Fed. R. Evid. 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 453-54 (9th Cir. 1994).

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although this policy is to be applied "with extreme liberality," *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001), allowing leave to amend is inappropriate in circumstances where litigants have failed to cure previously identified deficiencies, or where an amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

    B.    Alter Ego

"In California, two conditions must be met before the alter ego doctrine will be invoked." *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538 (2000). "First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist." *Id.* "Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Id.*

As to the first requirement, "[a]mong the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Id.* at 538–39 (quoting *Roman Catholic Archbishop v. Superior Ct.*, 15 Cal. App. 3d 405, 406, 411 (1971)). "Other factors which have been described in the case law include inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *Id.* at 539. "No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-03942 JAK (KSx) | Date | January 8, 2024 |
| Title | Triller Fight Club II LLC v. The H3 Podcast | | |

As to the second requirement, the alter ego doctrine applies only in limited circumstances:

> Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. A corporate identity may be disregarded—the "corporate veil" pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation. Under the alter ego doctrine, then, when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners. The alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds.

*Id.* at 538 (internal citations omitted). Accordingly, "[a]lter ego is an extreme remedy, sparingly used." *Id.* at 539.

The allegations in the TAC are sufficient to state claims against all Defendants. Specifically, although Plaintiff has not removed certain conclusory allegations that were also used in the SAC, the TAC contains additional allegations that satisfy the requirements of unity of interest and an inequitable result.

As to the unity of interest and ownership, it is alleged that TEI and Teddy Fresh share corporate officers and directors, i.e., Mr. and Mrs. Klein. TAC ¶¶ 15, 16, 17(a). It is further alleged that the two entities share employees and offices, and Plaintiff has identified two specific ways in which TEI employees perform services for Teddy Fresh and TEI's offices are used for Teddy Fresh's benefit. *Id.* ¶¶ 14, 17(a)(v). Identical equitable ownership has been adequately alleged through the contention that the Defendants collectively own and operate the YouTube channel and podcast at issue. *Id.* ¶ 3. Further details are provided regarding each Defendant's alleged role in their common enterprise. *See generally* TAC. It has been adequately alleged that TEI serves as a mere conduit for Teddy Fresh; it has been alleged that TEI is not very profitable and that one of the goals of Teddy Fresh is to use TEI's YouTube channel to market Teddy Fresh's products. *Id.* ¶ 17(a)(iii), (iv), (vii), (viii).[1] The TAC has also identified several corporate formalities not followed by TEI and Teddy Fresh. Specifically, it is alleged that neither of them had annual meetings, kept records or minutes or maintained written resolutions. *Id.* ¶ 17(d).

---

[1] Defendants object to these allegations because they cite an article published in *Fashionista*, and Defendants contend that the text of this article does not support the allegations in the TAC that refer to the article. Because the article is incorporated by reference into the TAC, it is appropriate to consider it. However, the allegations in paragraphs 17(a)(iii) and (iv) do not cite the *Fashionista* article, so they cannot be disregarded even if the article does not contain the statements in those paragraphs. As to the allegations in paragraphs 17(a)(vii) and (viii), some portions of those paragraphs are contradicted by the *Fashionista* article. However, there are citations to certain portions that are not contradicted, and that provide support for the determination that the TAC adequately states certain causes of action. Specifically, the *Fashionista* article states that Defendants' YouTube channel suffered an 80% drop in revenue and that one of Mrs. Klein's "big goals" was for her activities on social media to "trickle down" to benefit Teddy Fresh. Although the article did not name TEI specifically, the primary example of social media activity presented in the article was Mrs. Klein's participation in the podcast and YouTube channel allegedly operated by TEI.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-03942 JAK (KSx) | Date | January 8, 2024 |
|---|---|---|---|
| Title | Triller Fight Club II LLC v. The H3 Podcast | | |

There are also allegations that TEI has "few assets" and those assets have "limited value," *id.* ¶ 17(a)(ii),[2] which together with the other allegations, supports an inference that TEI was inadequately capitalized. Finally, there are allegations that the Defendants commingled their assets. It is alleged that Ms. Klein used equipment purchased by TEI to film personal videos for her personal TikTok account and to make advertisements for Teddy Fresh. *Id.* ¶ 17(a)(ix). Plaintiff alleges that Ms. Klein uses multiple pieces of equipment, including but not limited to light, microphones, and cameras, as well as camera, audio and other crew members from TEI to film videos for Teddy Fresh, but that Teddy Fresh does not compensate TEI for these benefits. *Id.* ¶ 17(a)(x).[3]

None of these allegations, standing alone, would be sufficient adequately to allege a unity of interest. However, when viewed collectively, and accepted as true, they are sufficient. Therefore, because the allegations in the TAC make it plausible that several of the relevant factors weigh in favor of the claim that is alleged, unity of interest has been adequately stated.

As to the element of an inequitable result, "mere '[d]ifficulty in enforcing a judgment or collecting a debt does not satisfy' the injustice standard for alter ego liability." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017) (quoting *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 539 (2000)). "The alter ego doctrine . . . instead affords protection where some conduct *amounting to bad faith* makes it inequitable for the corporate owner to hide behind the corporate form." *Id.* (quoting same). "Insolvency or inadequate capitalization may satisfy this standard 'when a corporation is so undercapitalized that it is unable to meet debts that may reasonably be expected to arise in the normal course of business." *Id.* (quoting *Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Serv., Inc.*, 736 F.2d 516, 525 (9th Cir. 1984)).

In the context of claims arising from intellectual property, the Ninth Circuit has found an inequitable result when the defendant "would not pay its judgment debt (leading to an inequitable result) unless the corporate veil were pierced, based on evidence regarding [the defendant's] financial condition and its failure to make payments . . . ." *UMG Recordings, Inc. v. BCD Music Grp., Inc.*, 509 F. App'x 661, 662 (9th Cir. 2013). The Ninth Circuit has held that no injustice would result when the defendant "has always been able to satisfy judgments against it, and the corporation maintained [substantial] net assets and equity . . . ." *Perfect 10*, 847 F.3d at 677–78. The TAC alleges that TEI was operated with "few assets" of "limited value." TAC ¶ 17(a)(ii). Together with the other averments, including the allegations that the Defendants needed to rely on one another's assets to conduct their ordinary business, it appears plausible that an inequitable result could occur if the corporate veil is not pierced.

---

[2] Defendants argue that this allegation cannot be made on information on belief. In support of this position, Defendants place primary reliance on *Wimbledon Fund, SPC v. Graybox, LLC*, No. CV15-6633-CAS(AJWX), 2016 WL 7444709, at *5 (C.D. Cal. Aug. 31, 2016). *Wimbledon* is distinguishable because it applied Fed. R. Civ. P. 9 after noting that the Texas veil-piercing statute requires proof of actual fraud. *Id.* California law does not include a similar requirement. Even if it were determined that Fed. R. Civ. P. 9 applied here, the particularity standard only applies to "the circumstances constituting fraud or mistake," not the adequacy of Defendants' capitalization. *See* Fed. R. Civ. P. 9(b).

[3] Although it is not specifically alleged that Mr. Klein has caused the commingling of assets, it appears to be undisputed that Mr. and Mrs. Klein are married and together operate TEI and Teddy Fresh. Under these circumstances, the alter ego allegations are sufficient as to Mr. Klein for the same reasons they are sufficient as to Mrs. Klein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-03942 JAK (KSx) | Date | January 8, 2024 |
|---|---|---|---|
| Title | Triller Fight Club II LLC v. The H3 Podcast | | |

For the foregoing reasons, the Motion is **DENIED** with respect to the alter ego issues.

      C.     Vicarious Copyright Infringement

"To prevail on a vicarious liability claim, [Plaintiff] must prove [Defendants] ha[d] (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 829 (9th Cir. 2019) (quoting *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745 (9th Cir. 2019)). "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps . . . ." *Id.* (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)).

*First*, "a plaintiff must show '[a]s a threshold matter . . . that there has been direct infringement by third parties.' " *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1050 (9th Cir. 2020) (quoting *Perfect 10*, 508 F.3d at 1169). The gravamen of the allegations in support of this claim is that the Distribution Video made it possible for at least 63 individuals who did not purchase the Broadcast on a pay-per-view basis to freely view a substantial portion of the Broadcast by accessing the Unlisted Video. TAC ¶¶ 34-35, 37. Defendants argue that the claim for vicarious copyright infringement fails because the only alleged direct infringement occurred when certain individuals streamed the Unlisted Video, and streaming does not constitute copyright infringement.[4]

The Copyright Act provides "the owner of [a] copyright . . . the exclusive rights . . . to reproduce the copyrighted work in copies . . . to distribute copies . . . of the copyrighted work to the public . . . to perform the copyrighted work publicly . . . [and] to display the copyrighted work publicly . . . ." 17 U.S.C. § 106. " 'Copies' are material objects . . . in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." *Id.* § 101. "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.* However, "[a] work consisting of sounds, images, or both, that are being transmitted, is 'fixed' . . . if a fixation of the work is being made simultaneously with its transmission." *Id.* For similar reasons, a work cannot be "displayed" without a copy. "To 'display' a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process or, in the case of a motion picture or other audiovisual work, to show individual images nonsequentially." *Id.*

The TAC alleges that the 63 individuals engaged in direct copyright infringement by viewing the Unlisted Video on YouTube. TAC ¶ 34. In streaming cases, courts apply a "necessarily fact-specific" inquiry. *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 130 (2d Cir. 2008).[5]

---

[4] Plaintiff asserts Defendants are precluded from raising this argument because it was implicitly rejected in the Prior Order or because it was never raised in the prior motion to dismiss. This position is not persuasive. A review of the prior motion to dismiss shows that Defendants have preserved this issue, and the Prior Order did not reject this argument.

[5] *Cartoon Network* is the only case cited by the parties concerning whether streaming constitutes copyright infringement. However, other cases have disagreed with certain portions of that decision. *See, e.g.*, *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1200 (D. Utah 2014); *Fox Television Stations, Inc.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-03942 JAK (KSx) | Date | January 8, 2024 |
| Title | Triller Fight Club II LLC v. The H3 Podcast | | |

Defendants place primary reliance on *Cartoon Network*, which held that fixation had not occurred when "each bit of data . . . is rapidly and automatically overwritten as soon as it is processed," and "[n]o bit of data remains in any buffer for more than a fleeting 1.2 seconds." *Id.* at 129-30. *Cartoon Network* distinguished a case where the relevant data "remained embodied in the computer's RAM memory until the user turned the computer off . . . ." *Id.* at 130. It also recognized that "other factors not present here may alter the duration analysis significantly . . . ." *Id.*

In connection with the Motion, there is no information in the record about the details of the technology used by the 63 individuals who allegedly viewed the videos at issue. It cannot be determined how long any bit of data remained on their respective computers, and how and when that data was overwritten. Consistent with this is that *Cartoon Network* and similar decisions that have applied the duration analysis have done so in connection with a motion for summary judgment, when an evidentiary record is presented. *See also MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993) (applying duration analysis at summary judgment). Viewed collectively, the allegations in the TAC make it plausible that at least some of the 63 individuals fixed an embodiment of the Broadcast for a period of more than transitory duration.

The allegations of direct financial benefit are also sufficient. Again, "[t]he essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps . . . ." *Erickson*, 921 F.3d at 829 (quoting *Ellison*, 357 F.3d at 1079). For example, infringement that acts as a "draw" for customers qualifies, but infringing material that is "just an added benefit" is insufficient. *Id.* The TAC alleges that individuals who accessed the Unlisted Video through the Distribution Video were more likely to re-watch the Distribution Video, because they had more context for the commentary in the Distribution Video about the Unlisted Video. TAC ¶ 38. It is also alleged that each view of the Distribution Video generates advertising revenue for Defendants through the YouTube Partner Program, and by other means. *Id.* ¶¶ 36, 39-40. It is plausible that the efforts of some or all of the 63 individuals to view the Unlisted Video allowed Defendants to obtain a financial benefit.

Defendants' arguments to the contrary are unpersuasive. They contend that the direct financial benefit must arise from the Unlisted Video rather than the Distribution Video. In support of this position, Defendants rely on *Long v. Dorset*, 854 F. App'x 861, 864 (9th Cir. 2021), which held that "Long's allegations that he paid Facebook to post advertisements for his business page on users' newsfeeds do not suffice as allegations that Facebook made money from Dorset's infringing posts on that page specifically." *Long* did not reject the theory that Plaintiff has advanced in the TAC, *i.e.*, that a direct financial benefit can accrue to a defendant where infringing material causes individuals to engage in other transactions with that defendant. Defendants rely on *Perfect 10*, which rejected an argument not made by Plaintiff. 847 F.3d at 674 ("Here, Perfect 10 argues for a rule that would allow a court to hold Giganews liable under a theory of vicarious liability by showing only that Giganews benefits financially from the infringement of *another's* works, regardless of whether Giganews received any financial benefit from the specific infringement alleged."). The allegations in the TAC are different, *i.e.*, that Defendants benefited from the infringement of Plaintiff's own work. Defendants cite several cases where it was determined that a direct financial benefit had been adequately alleged in different

---

*v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138, 1144 (C.D. Cal. 2012). Because the parties have not briefed the issue, whether *Cartoon Network* presents the appropriate standard is not determined, but is reserved.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-03942 JAK (KSx) | Date | January 8, 2024 |
|---|---|---|---|
| Title | Triller Fight Club II LLC v. The H3 Podcast | | |

circumstances. However, those cases do not stand for the proposition that those circumstances are the only ones in which there may be a direct financial benefit. Although it is alleged that Defendants obtained financial benefits from views of the Distribution Video, it is also alleged that the Unlisted Video caused people to view the Distribution Video again when they would not otherwise have done so. Thus, the allegations in the TAC are sufficient.

**IV.     Conclusion**

For the reasons stated in this Order, the Motion is **DENIED**. Defendants shall file an answer to the TAC within 14 days of the issuance of this Order.

**IT IS SO ORDERED.**

                                                                                                          _____ : _____

                                         Initials of Preparer     tj