Rom Bar-Nissim (SBN: 293356)
Rom@HeahBarNissim.com
**HEAH BAR-NISSIM LLP**
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: 310.432.2836

Attorneys for Defendants
Ted Entertainment, Inc., Teddy Fresh, Inc.,
Ethan Klein and Hila Klein

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRILLER FIGHT CLUB II LLC, a Delaware limited liability company, | Case No.: 2:21-cv-03942-JAK-KS |
| Plaintiff, | **DEFENDANTS' ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT** |
| v. | |
| TED ENTERTAINMENT, INC., a California corporation; TEDDY FRESH, INC., a California corporation; ETHAN KLEIN, an individual; HILA KLEIN, an individual; and DOES 1-10 | Assigned to: Hon. John A. Kronstadt |
| Defendants. | |
| TED ENTERTAINMENT, INC, a California corporation, | |
| Countercomplainant, | |
| v. | |
| TRILLER FIGHT CLUB II, LLC, a Delaware limited liability company | |
| Counter-defendant. | |

Defendants Ted Entertainment, Inc. ("TEI"), Teddy Fresh, Inc. ("TF"), Ethan Klein ("Ethan") and Hila Klein ("Hila") (collectively, "Defendants"), by and through their undersigned counsel, hereby answer the Third Amended Complaint ("TAC") (Dkt. No. 36) of Plaintiff Triller Fight Club II, LLC ("Triller"). Defendants, as individual defendants, respond to the allegations contained in Triller's TAC only insofar as they pertain to those particular defendants and not as to any other defendant in this matter. If an allegation is not specifically admitted, it is hereby denied.

## NATURE OF THIS ACTION

1. Defendants admit that there was a broadcast entitled *Jake Paul vs. Ben Askren* (the "Broadcast") and it included boxing amongst other things. Defendants deny that there is an Exhibit A to the TAC (or any version of Triller's complaint) – let alone a certificate of registration for the Broadcast. As to the remaining allegations contained in Paragraph 1 of the TAC, they are conclusions of law to which no response is required. Insofar as a response is required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 1 of the TAC and, therefore, deny them on that basis.

2. Defendants admit that the Broadcast was made available to consumers on a pay-per-view basis. As to the remaining allegations contained in Paragraph 2 of the TAC, they are conclusions of law to which no response is required. Insofar as a response is required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 2 of the TAC and, therefore, deny them on that basis.

3. Defendants admit the allegations contained in Paragraph 3 of the TAC insofar as it alleges that: (1) the URL in Paragraph 3 of the TAC directs individuals to the H3 Podcast YouTube Channel (the "H3 Podcast Channel"); (2) the H3 Podcast Channel is owned and operated by TEI; (3) the H3 Podcast Channel earns profits through the YouTube Partner Program, third party sponsors and, at the time the

Podcast aired, the sale of TEI merchandise; and (4) the number of views that videos on the H3 Podcast Channel receives is a factor (but not the sole factor) for the advertising revenue that TEI receives from the YouTube Partner Program. Defendants deny the remaining allegations contained in Paragraph 3 of the TAC because: (1) TF does not own or operate the H3 Podcast Channel; (2) Ethan and Hila are the shareholders of TEI and do not profit directly from TEI's activities; (3) TEI, Ethan and Hila do not directly profit from the sale of TF merchandise, rather, TF receives such profits; (4) TF, Ethan and Hila did not directly profit from the sale of TEI merchandise when such merchandise was made available; and (5) the number of views for the H3 Podcast Channel only indirectly affects the profits TEI receives from third-party sponsors and the profits TF receives from the sale of TF merchandise.

      4.      Defendants admit the allegations of Paragraph 4 of the TAC insofar as it alleges: (1) Defendants did not make a pay-per-view purchase of the Broadcast when TEI employees viewed it on April 17, 2021, but subsequently did make a pay-per-view purchase of the Broadcast; (2) Ethan admitted in TEI's April 22, 2021 podcast episode entitled *Jake Paul Fight Was A Disaster – H3 Podcast # 244* (the "Podcast") that he viewed the Broadcast via the Internet on an unauthorized stream by claiming to have "bootlegged" or "pirated" the Broadcast. As to the remaining allegations contained in Paragraph 4 of the TAC, they are conclusions of law to which no response is required. Insofar as a response is required, Defendants deny the remaining allegations contained in Paragraph 4 of the TAC.

      5.      Defendants admit the allegations of Paragraph 5 of the TAC insofar as it alleges: (1) on April 18, 2021, TEI found on YouTube a 13:57 minute excerpt of the 3:57:04 hour Broadcast, copied it and reuploaded it as an unlisted video (the "Reference Video") on the Zach the Sound Lad channel – which is a YouTube channel owned and operated by TEI; (2) 42 seconds of the Reference Video (comprised of 5 seconds of just audio, 9 seconds of both audio and video and 28

seconds of just video) were used by TEI for purposes of commentary and criticism in the Podcast. Defendants deny the allegations of Paragraph 5 of the TAC insofar as it alleges: (1) the Reference Video comprises all or a substantial portion of the Broadcast – as it comprised 5.9% of the Broadcast; and (2) insofar as the URL for the Reference Video was visible or legible in the Podcast – as demonstrated by the screenshot included in Paragraph 5 of the TAC. As to the remaining allegations contained in Paragraph 5 of the TAC, they are conclusions of law to which no responsive pleading is required. Insofar as a response is required, Defendants deny the remaining allegations of Paragraph 5 of the TAC.

6.     Defendants admit the allegations contained in Paragraph 6 of the TAC insofar as it alleges that the Podcast received approximately 1.1 million views to date. The number views for the Podcast, however, dropped off significantly shortly after the Podcast initially aired.

7.     The allegations contained in Paragraph 7 of the TAC constitute conclusions of law to which no response is required. Insofar as a response is required, Defendants deny the allegations contained in Paragraph 7 of the TAC.

**JURISDICTION AND VENUE**

8.     Defendants deny that they have committed any infringement or wrongful acts, but do not contest that this action arises under the Copyright Act of 1976, Title 17 U.S.C. § 101, *et seq*. and that this Court has federal jurisdiction under 28 U.S.C. § 1338(a).

9.     Defendants deny that they have committed any infringement or wrongful acts, but they do not contest Triller's selection of venue in this judicial district under 28 U.S.C. § 1391(b)(2).

**PARTIES**

10.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 10 of the TAC and, therefore, deny them on that basis.

11.     Defendants admit that, for some unknown period of time, the Broadcast was made available to the public through pay-per-view purchase. The remaining allegations contained in Paragraph 11 of the TAC constitute conclusions of law to which no response is required. Insofar as a response is required to the remaining allegations contained in Paragraph 11 of the TAC, Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 11 of the TAC and, therefore, deny them on that basis.

12.     The allegations contained in Paragraph 12 of the TAC constitute conclusions of law to which no response is required. Insofar as a response is required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the TAC and, therefore, deny them on that basis.

13.     Defendants deny the allegations contained in Paragraph 13 of the TAC insofar as it alleges that TEI earns profits from the sale of third-party merchandise, including TF merchandise. Defendants admit the remaining allegations contained in Paragraph 13 of the TAC.

14.     Defendants admit the allegations contained in Paragraph 14 of the TAC.

15.     Defendants admit the allegations contained in Paragraph 15 of the TAC.

16.     Defendants admit the allegations contained in Paragraph 16 of the TAC.

## ALTER EGO ALLEGATIONS

17.     The allegations contained in Paragraph 17 of the TAC constitute conclusions of law to which no response is required. Insofar as a response is required, Defendants deny the allegations contained in Paragraph 17 of the TAC.

a.   The allegations contained in Paragraph 17(a) of the TAC constitute

conclusions of law to which no response is required. Insofar as a response is required, Defendants: (1) admit that Ethan and Hila are corporate officers for both TEI and TF and that Hila is a director of TF and TEI: and (2) deny the remaining allegations contained in Paragraph 17(a) of the TAC.

    i.  Defendants deny the allegations contained in Paragraph 17(a)(i) insofar as it alleges that TEI fails to maintain adequate liability insurance to pay claims against TEI. TEI does maintain insurance coverage for a variety of claims, but did have coverage for the claims at issue in this dispute.

    ii.  The allegations contained in Paragraph 17(a)(ii) constitute conclusions of law to which no response is required. Insofar as a response is required, Defendants deny the allegations contained in Paragraph 17(a)(ii).

    iii.  Defendants admit the allegations contained in Paragraph 17(a)(iii) of the TAC insofar as it alleges that, in May 2017, an event called the Adpocalypse temporarily resulted in lower ad revenue for YouTube videos. Defendants deny the remaining allegations contained in Paragraph 17(a)(iii) of the TAC because the ad revenue for H3 Podcast Channel was not significantly or permanently affected by the 2017 Adpocalypse. Rather, TEI's other YouTube channels – such as h3h3Productions and Ethan and Hila experienced more of an impact from the 2017 Adpocalypse.

    iv.  Defendants admit the allegations contained in Paragraph 17(a)(iv) of the TAC insofar as it alleges that TF merchandise is marketed on the H3 Podcast Channel amongst other things. Defendants lack knowledge and

information sufficient to form a belief as to the truth of the allegation in Paragraph 17(a)(iv) of the TAC that the audience for the H3 Podcast Channel and the customer base for TF are the same. While Defendants know there is some overlap between the two, Defendants are unable to determine whether the two are the same – *i.e.*, coextensive.

v. Defendants admit the allegations contained in Paragraph 17(a)(v) of the TAC insofar as it alleges that: (1) TEI employees model TF garments; (2) individuals in the video identified in Paragraph 17(a)(v) model TF garments; (3) three of the five individuals that appeared in the video identified in Paragraph 17(a)(v) did not work for TF; (4) Ethan, Hila and two other individuals that appeared in the video identified in Paragraph 17(a)(v) were employees of TEI when the video was made; and (5) three of the individuals that appeared in the video identified in Paragraph 17(a)(v) were not compensated for modeling TF garments. Defendants deny the allegations contained in Paragraph 17(a)(v) of the TAC insofar as it alleges: (1) the URL identified in Paragraph 17(a)(v) is the H3 Podcast Channel – rather it is a separate channel owned and operated by TEI entitled the H3 Podcast Highlights channel; (2) the individuals modeling TF garments in the video identified in Paragraph 17(a)(v) were TEI employees because one was an independent contractor; (3) Ethan and Hila were not employees of TF at the time the video identified in Paragraph 17(a)(v) was made because they were TF employees at the time;  and(4) the video identified in Paragraph 17(a)(v)

DEFENDANTS' ANSWER TO THE TAC

1   shows boxes of TF garments in the background because

2   those boxes are not of TF garments but various props and

3   costume pieces for H3 Podcast Channel videos.

4   vi.   Defendants admit that the article identified in Paragraph

5   17(a)(vi) is a Fashionista Article authored by Morgan

6   Whipple containing an interview of Hila (the "Fashionista

7   Article"). Defendants deny the allegations contained in

8   Paragraph 17(a)(vi) of the TAC insofar as it alleges that: (1)

9   Hila admits to commingling asserts in the Fashionista Article

10   (*see also* Dkt. No. 50, p. 5, fn. 1 (recognizing that some

11   allegations in the TAC are contradicted by the cited

12   Fashionista Article); and (2) to any commingling of assets.

13   vii.   Defendants admit the allegations contained in Paragraph

14   17(a)(vii) of the TAC insofar as it alleges that: (1) in May

15   2017, an event called the Adpocalypse temporarily resulted

16   in lower ad revenue for YouTube videos; and (2) the

17   Fashionista Article contains the quote from Hila that "You

18   don't want all your eggs in one basket." Defendants deny the

19   remaining allegations of Paragraph 17(a)(vii) of the TAC

20   insofar as it alleges that: (1) the quote from Hila was in

21   reference to the H3 Podcast Channel, rather it was a more

22   generalized proposition to diversify income from sources

23   other than posting online content; (2) insofar as the

24   advertising revenue for the H3 Podcast Channel was

25   materially impacted by the 2017 Adpocalypse; (3)

26   Defendants diverted any funds from TEI to TF – let alone

27   that Hila admitted to doing so in the Fashionista Article; and

28   (4) any assets were removed by Defendants from TEI – let

alone that Hila admitted to this in the Fashionista Article.

viii. Defendants deny the allegations contained in Paragraph 17(a)(viii) of the TAC because: (1) as stated by Hila in the Fashionista Article, Hila's goal was for engagement with her Instagram account (as opposed to the H3 Podcast Channel) to "trickle down to Teddy Fresh" because "if I'm [*i.e.*, Hila] more a part of the fashion conversation, Teddy Fresh will be as well"; and (2) while TEI helps promote TF apparel, it is not the business goal for the H3 Podcast Channel to create revenue for TF.

ix. Defendants admit the allegations in Paragraph 17(a)(ix) of the TAC insofar as it alleges that the URL identified in Paragraph 17(a)(ix) is Hila's personal TikTok account. Defendants deny the allegations contained in Paragraph 17(a)(ix) insofar as it alleges: (1) Hila used TEI equipment to film videos for her personal TikTok account; and (2) that Hila makes advertisements for TF on her TikTok account. As to the remaining allegations contained in Paragraph 17(a)(ix), they constitute conclusions of law to which no responsive pleading is required. Insofar as a response to the remaining allegations contained in Paragraph 17(a)(ix) is required, Defendants deny the remaining allegations.

x. Defendants deny the allegations contained in Paragraph 17(a)(x) of the TAC that Hila uses TEI equipment and crew members to film videos for TF. As to the remaining allegations contained in Paragraph 17(a)(x) of the TAC, they are conclusions of law to which no responsive pleading is required. Insofar as a response is required, Defendants deny

the remaining allegations contained in Paragraph 17(a)(x) of the TAC.

b.  The allegations contained in Paragraph 17(b) of the TAC are conclusions of law to which no response is required. Insofar as a response is required, Defendants deny the allegations contained in Paragraph 17(b) of the TAC.

c.  The allegations contained in Paragraph 17(c) of the TAC are conclusions of law to which no response is required. Insofar as a response is required, Defendants deny the allegations contained in Paragraph 17(c) of the TAC.

d.  The allegations contained in Paragraph 17(d) of the TAC are conclusions of law to which no response is required. Insofar as a response is required, Defendants deny the allegations contained in Paragraph 17(d) of the TAC.

18.     The allegations contained in Paragraph 18 of the TAC are conclusions of law to which no response is required. Insofar as a response is required, Defendants deny the allegations contained in Paragraph 18 of the TAC.

## COUNT ONE

### (Copyright Infringement)

19.     Defendants incorporate by reference their responses to Paragraphs 1 through 18 of the TAC set forth above as if they were fully set forth herein.

20.     The allegations contained in Paragraph 20 of the TAC are conclusions of law to which no responsive pleading is required. Insofar as a response is required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the TAC and, therefore, deny them on that basis.

21.     Defendants admit the allegation contained in Paragraph 21 of the TAC insofar as it alleges that the Broadcast was available to consumers for purchase on a

pay-per-view basis for a period of time. As to the remaining allegations contained in Paragraph 21 of the TAC, they constitute conclusions of law to which no responsive pleading is required. Insofar as a response is required for the remaining allegations contained in Paragraph 21 of the TAC, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the TAC and, therefore, deny them on that basis.

22.     Defendants admit the allegations of Paragraph 22 of the TAC insofar as it alleges: (1) Defendants did not make a pay-per-view purchase of the Broadcast when it aired on April 17, 2021, but subsequently did make a pay-per-view purchase of the Broadcast; (2) Ethan admitted in TEI's April 22, 2021 Podcast that he viewed the Broadcast via the Internet on an unauthorized stream by claiming to have "bootlegged" or "pirated" the Broadcast. As to the remaining allegations contained in Paragraph 22 of the TAC, they are conclusions of law to which no response is required. Insofar as a response is required, Defendants deny the remaining allegations contained in Paragraph 22 of the TAC.

23.     Defendants admit that the allegations contained in Paragraph 23 of the TAC insofar as it alleges that Defendants did not purchase a license to view the Broadcast on April 17, 2021, but they did subsequently pay $49.99 for a license to view the Broadcast. As to the remaining allegations contained in Paragraph 23 of the TAC, Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 23 of the TAC and, therefore, deny them on that basis.

24.     Defendants admit the allegations of Paragraph 24 of the TAC insofar as it alleges: (1) on April 18, 2021, TEI uploaded a 13:57 minute excerpt of the 3:57:04 hour Broadcast (*i.e.*, the Reference Video) as an unlisted video to the Zach the Sound Lad channel – which is a YouTube channel owned and operated by TEI; (2) 42 seconds of the Reference Video (comprised of 5 seconds of just audio, 9 seconds of both audio and video and 28 seconds of just video) were used by TEI in

the Podcast for purposes of commentary and criticism of the Broadcast. Defendants deny the following allegations of Paragraph 24 of the TAC insofar as it alleges: (1) the Reference Video comprise all or a substantial portion of the Broadcast – as it comprised 5.9% of the Broadcast; and (2) insofar as the URL for the Reference Video was visible or legible in the Podcast – as demonstrated by the screenshot included in Paragraph 5 of the TAC. As to the remaining allegations contained in Paragraph 24 of the TAC, they are conclusions of law to which no responsive pleading is required. Insofar as a response is required, Defendants deny the remaining allegations of Paragraph 24 of the TAC.

    25.    Defendants admit the allegations contained in Paragraph 25 of the TAC insofar as it alleges that the Podcast received approximately 1.1 million views. The number views for the Podcast, however, dropped off significantly shortly after the Podcast initially aired.

    26.    Defendants deny the allegations contained in Paragraph 26 of the TAC insofar as it alleges that the individuals who watched the Reference Video were able to watch all or a substantial portion of the Broadcast because: (1) the Reference Video was only 13:47 minutes, while the Broadcast was 3:47:04 hours; and (2) as the YouTube analytic data for the Reference Video (displayed below) demonstrates, the average view time for the Reference Video was 57 seconds. As to the remaining allegations contained in Paragraph 26 of the TAC, Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 26 of the TAC and, therefore, deny them on that basis.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



27.     The allegations contained in Paragraph 27 of the TAC constitute conclusions of law to which no response is required. Insofar as a response is required, Defendants deny the allegations contained in Paragraph 27 of the TAC.

28.     The allegations contained in Paragraph 28 of the TAC constitute conclusions of law to which no response is required. Insofar as a response is required, Defendants deny the allegations contained in Paragraph 28 of the TAC.

<u>**COUNT TWO**</u>

**(Vicarious Copyright Infringement)**

29.     Defendants incorporate by reference their responses to Paragraphs 1 through 28 of the TAC set forth above as if they were fully set forth herein.

30.     The allegations contained in Paragraph 30 of the TAC are conclusions of law to which no responsive pleading is required. Insofar as a response is required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the TAC and, therefore, deny them on that basis.

31.     Defendants admit the allegation contained in Paragraph 31 of the TAC insofar as it alleges that the Broadcast was available to consumers for purchase on a pay-per-view basis for a period of time. As to the remaining allegations contained in Paragraph 21 of the TAC, they constitute conclusions of law to which no responsive pleading is required. Insofar as a response is required for the remaining allegations

DEFENDANTS' ANSWER TO THE TAC

contained in Paragraph 31 of the TAC, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the TAC and, therefore, deny them on that basis.

32.     Defendants admit the allegations of Paragraph 32 of the TAC insofar as it alleges: (1) on April 18, 2021, TEI uploaded a 13:57 minute excerpt of the 3:57:04 hour Broadcast (*i.e.*, the Reference Video) as an unlisted video to the Zach the Sound Lad channel – which is a YouTube channel owned and operated by TEI; (2) 42 seconds of the Reference Video (comprised of 5 seconds of just audio, 9 seconds of both audio and video and 28 seconds of just video) were used by TEI in the Podcast for purposes of commentary and criticism of the Broadcast. Defendants deny the allegations of Paragraph 24 of the TAC insofar as it alleges: (1) the Reference Video comprise all or a substantial portion of the Broadcast – as it comprised 5.9% of the Broadcast; and (2) insofar as the URL for the Reference Video was visible or legible in the Podcast – as demonstrated by the screenshot included in Paragraph 5 of the TAC. As to the remaining allegations contained in Paragraph 32 of the TAC, they are conclusions of law to which no responsive pleading is required. Insofar as a response is required, Defendants deny the remaining allegations of Paragraph 32 of the TAC.

33.     Defendants admit the allegations contained in Paragraph 33 of the TAC insofar as it alleges that the Podcast received approximately 1.1 million views. The number views for the Podcast, however, dropped off significantly shortly after the Podcast initially aired.

34.     Defendants deny the allegations contained in Paragraph 34 of the TAC insofar as it alleges that the individuals who watched the Reference Video were able to watch all or a substantial portion of the Broadcast because: (1) the Reference Video was only 13:47 minutes long, while the Broadcast was 3:47:04 hours long; and (2) as the YouTube analytic data from the Reference Video (displayed above) demonstrates, the average view time for the Reference Video was 57 seconds. As to

1 the remaining allegations contained in Paragraph 34 of the TAC, Defendants lack
2 knowledge and information sufficient to form a belief as to the truth of the remaining
3 allegations contained in Paragraph 34 of the TAC and, therefore, deny them on that
4 basis.

5      35.    The allegations contained in Paragraph 35 of the TAC are conclusions
6 of law for which no response is required. Insofar as a response is required,
7 Defendants deny the allegations contained in Paragraph 35 of the TAC.

8      36.    The allegations contained in Paragraph 36 of the TAC are conclusions
9 of law for which no response is required. Insofar as a response is required,
10 Defendants deny the allegations contained in Paragraph 36 of the TAC.

11      37.    Defendants deny the allegations contained in Paragraph 37 of the TAC
12 insofar as it alleges that 63 individuals watched the Reference Video. As the
13 YouTube analytics data for the Reference Video (shown below) demonstrates, (1)
14 the Reference Video had a total of 51 unique viewers (and Triller was made aware of
15 this fact on June 1, 2021); and (2) the overwhelming majority of those viewers
16 watched the Reference Video on May 3, 2021 (and Triller was made aware of this
17 fact on June 1, 2021). The explanation for the May 3, 2021 spike in viewers of the
18 Reference Video is attributable to Triller (and Triller was made aware of this fact on
19 June 1, 2021). On May 3, 2021, Triller issued a press release to various media
20 outlets, including Reuters, who published an article entitled "EXCLUSIVE Triller
21 offers clemency to boxing fans who pirated Jake Paul bout if they pay up" (*available
22 at*: https://www.reuters.com/lifestyle/sports/exclusive-triller-offers-clemency-
23 boxing-fans-who-pirated-jake-paul-bout-if-they-2021-05-03/) (the "Reuters
24 Article"). As demonstrated by the Reuters Article, Triller's head of piracy, Matt St.
25 Claire, publicized Triller's lawsuit against the H3 Podcast as part of an advertisement
26 and promotion of Triller's so-called amensty program for individuals who watched
27 the Broadcast without authorization. As to the remaining allegations contained in
28 Paragraph 37 of the TAC, Defendants lack knowledge and information sufficient to

form a belief as to the truth of the remaining allegations contained in Paragraph 37 of the TAC and, therefore, deny them on that basis.



38.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the TAC insofar as it alleges: (1) that people who watched the Reference Video subsequently watched the Podcast; and (2) that people who watched the Reference Video subsequently watched the Podcast to watch the commentary on the excerpt of the Reference Video. Defendants deny the allegation contained in Paragraph 38 insofar as it alleges that Defendants (in general) or TEI (in particular) would have received additional revenue from viewers who allegedly watched the Reference Video and then subsequently watched Podcast. YouTube ad revenue for a monetized video is allocated per 1,000 views. Consequently, even assuming everyone who allegedly watched the Reference Video subsequently watched the Podcast, the number of viewers would be insufficient to reach the 1,000 views threshold for an additional allocation of YouTube revenue.

39.    Defendants deny the allegations contained in Paragraph 39 of the TAC for the reasons set forth in response to Paragraph 38.

40.    Defendants deny the allegations contained in Paragraph 40 of the TAC because: (1) TEI made no statement encouraging viewers of the Podcast to watch the Reference Video; (2) TEI did not prominently display the URL to the Reference

Video and was illegible for the reasons set forth in Paragraph 5 above; (3) TEI did not provide a hyperlink to the Reference Video in any manner; (4) there were not 63 individual viewers of the Reference Video for the reasons set forth in Paragraph 37 above; (5) the number of viewers of the Reference Video were insufficient to trigger any allocation ad revenue for the Podcast as explained in Paragraph 38 above; and (6) Defendants did not receive any other form of financial benefit from the individuals who watched the Reference Video for the reasons set forth above.

41.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the TAC and, therefore, deny them on that basis.

## **COUNT THREE**

### **(Violation of the Federal Communications Act, 47 U.S.C. § 605)**

42.     Defendants incorporate by reference their responses to Paragraphs 1 through 41 of the TAC set forth above as if they were fully set forth herein.

43.     The allegations contained in Paragraph 43 of the TAC are conclusions of law to which no responsive pleading is required. Insofar as a response is required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 of the TAC and, therefore, deny them on that basis.

44.     Defendants admit the allegations contained in Paragraph 44 of the TAC insofar as it alleges that the Broadcast was available to consumers for purchase on a pay-per-view basis for a period of time. As to the remaining allegations contained in Paragraph 44 of the TAC, they constitute conclusions of law to which no responsive pleading is required. Insofar as a response is required for the remaining allegations contained in Paragraph 44 of the TAC, Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 44 of the TAC and, therefore, deny them on that basis.

45.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 of the TAC and, therefore, deny them on that basis.

46.     Defendants deny the allegations contained in Paragraph 46 of the TAC insofar as it alleges: (1) that Defendants intercepted, received or de-scrambled the Broadcast from a satellite signal (let alone for any commercial advantage) as TEI employees viewed the Broadcast on April 17, 2021 via the internet as part of preparing TEI's criticism of the Broadcast for the Podcast; (2) the Reference Video was a copy of YouTube video of the same length and made to preserve a clip of the Broadcast to facilitate TEI's commentary and criticism of the Broadcast; (3) the Reference Video did not comprise all or a substantial portion of the Broadcast for the reasons set forth in Paragraph 5 above; and (4) neither Defendants nor TEI displayed the URL for the Reference Video for the reasons set forth in Paragraphs 5 and 40 above. As to the remaining allegations contained in Paragraph 46 of the TAC, they constitute conclusions of law to which no response is required. Insofar as a response is required, Defendants deny the remaining allegations contained in Paragraph 46 of the TAC.

47.     Defendants admit the allegations contained in Paragraph 47 of the TAC insofar as it alleges that the Podcast received approximately 1.1 million views. The number views for the Podcast, however, dropped off significantly shortly after the Podcast initially aired.

48.     Defendants deny the allegations contained in Paragraph 48 insofar as it alleges that the Reference Video comprised all or a substantial portion of the Broadcast for the reasons set forth in Paragraph 5 above. As to the remaining allegations contained in Paragraph 48, Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 48 and, therefore, deny them on that basis.

49.     The allegations contained in Paragraph 49 of the TAC are conclusions

of law to which no response is required. Insofar as a response is required, Defendants deny the allegations contained in Paragraph 49 of the TAC for the reasons set forth above.

**<u>PRAYER FOR RELIEF</u>**

<u>AS TO COUNT ONE</u>

50.    Defendants deny that Triller is entitled to the relief requested in Paragraph 50 of the TAC.

51.    Defendants deny that Triller is entitled to the relief requested in Paragraph 51 of the TAC.

52.    Defendants deny that Triller is entitled to the relief requested in Paragraph 52 of the TAC.

<u>AS TO COUNT TWO</u>

53.    Defendants deny that Triller is entitled to the relief requested in Paragraph 53 of the TAC.

54.    Defendants deny that Triller is entitled to the relief requested in Paragraph 54 of the TAC.

55.    Defendants deny that Triller is entitled to the relief requested in Paragraph 55 of the TAC.

<u>AS TO COUNT THREE</u>

56.    Defendants deny that Triller is entitled to the relief requested in Paragraph 56 of the TAC.

<u>AS TO ALL COUNTS</u>

57.    Defendants deny that Triller is entitled to the relief requested in Paragraph 57 of the TAC.

58.    Defendants deny that Triller is entitled to the relief requested in Paragraph 58 of the TAC.

59.    Defendants deny that Triller is entitled to the relief requested in Paragraph 59 of the TAC.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses to Triller's TAC. All such defenses are pled in the alternative, do not constitute an admission of liability, do not imply a concession that Triller is entitled to any relief, and do not constitute an assumption of the burden of proof and/or persuasion that would otherwise rest on Triller. Defendants allege that they cannot fully anticipate all affirmative defenses that may be applicable to the present action. Accordingly, Defendants hereby reserve their right to assert additional affirmative defenses based on information subsequently acquired through discovery, investigation, or otherwise, if and to the extent such affirmative defenses are applicable. Subject to the foregoing, for their affirmative defenses in this action, Defendants hereby assert and allege the following.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

Triller's TAC and each claim for relief therein (in whole or in part) fail to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Fair Use)

Triller's copyright claims fail (in whole or in part) because, to the extent Triller's Broadcast allegedly was copied without authorization from Triller, such use constituted "fair use" under 17 U.S.C. § 107.

## THIRD AFFIRMATIVE DEFENSE
### (No Underlying Infringement)

Triller's claim of vicarious copyright infringement against Defendants is barred (in whole or in part) as Triller cannot establish any underlying infringement by a third-party.

/ / /

/ / /

DEFENDANTS' ANSWER TO THE TAC

## FOURTH AFFIRMATIVE DEFENSE

### (Lack of Right and Ability to Control)

Triller's claim of vicarious copyright infringement against Defendants is barred as Defendants did not have the right and ability to control any purported third-party infringement.

## FIFTH AFFIRMATIVE DEFENSE

### (Lack of Direct Financial Benefit)

Triller's claim of vicarious copyright infringement against Defendants is barred as Defendants did not receive a direct financial benefit from the alleged infringement.

## SIXTH AFFIRMATIVE DEFENSE

### (Innocent Infringement)

To the extent Triller seeks statutory damages from Defendants' purported infringement of the Broadcast (which Defendants deny), such recovery should be limited as the purported infringement was innocent rather than willful.

## SEVENTH AFFIRMATIVE DEFENSE

### (Limited Recovery of Statutory Damages)

To the extent Triller seeks statutory damages from Defendants' or third-parties purported infringement of the Broadcast (which Defendants deny), Triller is only entitled to a single award of statutory damages because there is only one work at issue and the Defendants and the third-parties would be jointly and severally liable for the alleged infringement of the Broadcast.

## SEVENTH AFFIRMATIVE DEFENSE

### (No Attributable Profits)

To the extent that Triller seeks the recovery of profits or revenues from Defendants purported infringement of Triller's Broadcast (which Defendants deny), such profits and revenues were not attributable to (nor can they be allocated or apportioned) based upon the acts of infringement alleged in the TAC.

## **EIGHTH AFFIRMATIVE DEFENSE**

### **(No Liability for Internet Transmissions)**

Triller's Federal Communications Act claim fails (in whole or in part) because 47 U.S.C. Section 605 does not apply to Internet transmissions.

## **NINTH AFFIRMATIVE DEFENSE**

### **(No Enhanced Statutory Damages)**

To the extent that Triller seeks enhanced statutory damages under 47 U.S.C. Section 605 for its Federal Communications Act claim, such recovery should be denied because Defendants acts were not committed willfully and for purpose of direct or indirect commercial advantage or private financial gain.

## **TENTH AFFIRMATIVE DEFENSE**

### **(Unclean Hands)**

Triller's claims for relief are barred (in whole or in part) by the equitable doctrine of unclean hands.

## **ELEVENTH AFFIRMATIVE DEFENSE**

### **(No Causation)**

Triller did not suffer harm from the claims alleged in the TAC (whether in whole or in part) as a result of any acts or omissions of Defendants as alleged in the TAC or otherwise, and any purported damages or harm to Triller were the result of causes other than the acts or omissions of Defendants.

## **TWELFTH AFFIRMATIVE DEFENSE**

### **(No Unity of Interest)**

Triller's alter ego allegations against TF, Ethan and Hila fail (in whole or in part) because there is no unity of interest between them (both individually and collectively) and TEI.

## **THIRTEENTH AFFIRMATIVE DEFENSE**

### **(No Inequitable Result)**

Triller's alter ego allegations against TF, Ethan and Hila fail (in whole or in

part) because no inequitable result will occur if they are treated separately from TEI.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

Triller is barred from recovery (in whole or in part) because of and to the extent of its failure to mitigate its alleged damages.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (No Attorneys' Fees)

To the extent that Triller seeks its attorneys' fees for the present action, it is not entitled to such relief under the circumstances.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (No Jury for Equitable Issues)

Triller is not entitled to a jury trial on any equitable issues.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Other Affirmative Defenses)

Defendants at this time have insufficient information upon which to form a belief as to whether they may have additional affirmative defenses. Defendants reserve their right to assert additional affirmative defenses in the event they discover facts upon which such affirmative defenses may be based.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray as follows:

1. That Triller take nothing by way of the TAC against Defendants, and the action be dismissed with prejudice;

2. That judgment be entered in favor of Defendants and against Triller with respect to all claims in the TAC;

3. That the Court award Defendants their attorneys' fees and all other costs reasonably incurred in defense of this action to the extent provided for by law; and

4. That the court award such other relief that it deems just and proper to

DEFENDANTS' ANSWER TO THE TAC

1                 Defendants.

2        Dated: January 23, 2024              **HEAH BAR-NISSIM LLP**

3

4

                    By _____

5                        ROM BAR-NISSIM
                       Attorneys for Defendants

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' ANSWER TO THE TAC